[620 NYS2d 827]

LIBERTY MANAGEMENT & CONSTRUCTION LTD., Respondent, v FIFTH AVENUE & SIXTY-SIXTH STREET CORPORATION, Defendant, and FOREIGN COMMONWEALTH OFFICE/OVERSEAS STATE DEPARTMENT OF THE UNITED KINGDOM AND SECRETARY OF STATE FOR FOREIGN AFFAIRS OF THE UNITED KINGDOM, Appellant.

First Department, January 5, 1995

### APPEARANCES OF COUNSEL

*Ludwig A. Saskor* of counsel, New York City *(Graham E. Barkham* and *Barbara S. Friedman* with him on the brief; *Smith, Steibel, Alexander & Saskor, P. C.,* attorneys), for appellant.

*Arnold Koenig* of counsel, Rockville Centre *(Margolies & Koenig,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

This appeal has its origins in a dispute arising out of a construction project. Plaintiff is a building contractor and defendant-appellant, Secretary of State for Foreign and Commonwealth Affairs of the United Kingdom, sued herein as "Foreign Commonwealth Office/Overseas State Department of the United Kingdom and Secretary of State for Foreign Affairs of the United Kingdom", the owner of a Manhattan cooperative apartment used as the residence of the British Consul General. Pursuant to the instructions to bidders, plaintiff submitted a proposal to appellant to renovate the apartment at a cost of $418,000. The proposal acknowledged that plaintiff had examined and understood the instructions and the drawings and specifications, including, *inter alia,* the General Conditions, and agreed to perform the work "in strict compliance with the proposed [c]ontract [d]ocuments", which included, *inter alia,* a standard AIA form contract and AIA General Conditions incorporated by reference in the AIA contract. The General Conditions contained a clause providing that "[a]ny controversy or [c]laim arising out of or related to the [c]ontract, or the breach thereof, shall be settled by arbitration". On December 12, 1991, plaintiff revised its proposal to increase the amount of its bid to $426,160.

By letter dated December 16, 1991, appellant accepted plaintiff's revised bid and thereafter forwarded plaintiff an AIA form contract, dated December 20, 1991, signed by appellant. Plaintiff, by letter dated January 2, 1992, acknowledged

receipt of "the AIA signed contract" and requested a change in the commencement and completion dates, to which appellant, by letter dated January 10, 1992, agreed. Plaintiff never signed the AIA contract, which provided that "[t]he 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference" and stated that the contract "represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral".

Under the General Conditions plaintiff was required, at least 10 days before the date established for each progress payment, to submit to the architect specified in the AIA contract an itemized application for payment supported by such data as appellant or the architect might require. The architect would then issue a certificate for payment for such amounts as he determined to be due. The General Conditions contain a similar requirement for work changes.

During the course of the work the parties followed the General Conditions' payment procedures. With each request for a progress payment plaintiff certified, as required, that the work for which payment was sought had been completed "in accordance with the [c]ontract [d]ocuments." The last two applications for payment, dated September 15 and 25, 1992, sought some $118,000 and related in whole or part to changes and extra work not specifically provided for in the contract, for which there was no agreed price. Inasmuch as the AIA General Conditions require the contractor to keep an "itemized accounting" for such items, as well as "appropriate supporting data", and plaintiff failed to submit any back-up data or supporting documentation for this work, such as the number of hours involved and wage rate in the case of labor charges, the cost and underlying invoices therefor in the case of materials and the underlying invoices in the case of appliances, appellant's construction cost consultants would not approve the charges. In addition, appellant claimed that some of the work was defective. On December 1, 1992, plaintiff filed a notice of lien in the amount of $118,471 against the building in which the apartment is located, which lien was promptly bonded and discharged.

Plaintiff thereafter brought this action seeking foreclosure of the mechanic's lien or, alternatively, judgment in the sum of $118,471. Named as a defendant, besides appellant, was Fifth Avenue & Sixty-Sixth Street Corporation, the fee owner

of the building in which the apartment is located. The complaint alleged that the parties "entered into a written contract for the improvement of real property, a copy of which is annexed hereto" as an exhibit. Annexed to the complaint were the first and last pages of the AIA contract, the latter showing appellant's signature and the unsigned space for plaintiff's. An amended complaint, not served upon appellant until it was received as an exhibit to plaintiff's papers opposing appellant's motion to compel arbitration, alleges merely that the parties "entered into an agreement for the improvement of real property." No exhibits are annexed to the amended complaint.

Before interposing an answer, appellant moved to compel arbitration. Plaintiff opposed on the ground that it had not signed the AIA contract, that its initial proposal made on November 18, 1991 and later revised to increase the bid to $426,160 was accepted by appellant's December 16, 1991 letter, which it received on December 20, 1991. The forwarding of the AIA contract dated December 20, 1991 was a mistake, it asserted, since, as plaintiff's president argued, "I never agreed to this particular contract as there was already a contract between us. No new consideration was offered, and you will note that I never signed this agreement." Without submitting a copy thereof, plaintiff claimed that it advised appellant in its January 2, 1992 letter that "what [appellant] had sent us was wrong", that the parties had come to an earlier contractual agreement as a result of appellant's December 16, 1991 letter. In point of fact though, plaintiff's January 2, 1992 letter makes no mention of appellant's December 16, 1991 letter. In reality, according to the letter, the only thing "wrong" with the forwarded AIA contract were the commencement and completion dates, which were revised to accommodate plaintiff's wishes. Plaintiff also claimed in opposition to the motion that the proffer of an AIA contract represented a unilateral attempt by appellant to change the agreement already reached and that it had never agreed to arbitration, a subject which had never been discussed. The IAS Court denied the motion on the ground that "[t]here is no signed contract and [in]sufficient other support to compel arbitration."

Plaintiff thereafter moved for, *inter alia,* summary judgment, alleging that it had completed all the work required by the contract, "including the various change orders and additions." Although it attached a copy of an unidentified "billing sheet" and a copy of an AIA application for payment, dated

September 25, 1992, seeking $117,871, there was no breakdown of labor hours and rates or invoices for materials. Plaintiff also sought partial summary judgment for $35,239 based on a "without prejudice" written settlement offer in that amount, which it had refused. Ultimately, after reargument, the court awarded plaintiff summary judgment in the sum of $91,458, the difference between the sum sought by plaintiff, $117,871, and $26,413, appellant's estimate of the cost of correcting improperly performed work. The IAS Court's determination was based on the failure of either side to dispute the amount sought by the other.

Appellant appeals from the subsequently entered $101,519.22 judgment and the order granting summary judgment as well as the order denying the motion to compel arbitration. The appeals have been consolidated. We reverse. The order granting summary judgment and judgment entered thereon cannot stand inasmuch as the controversy is covered by the arbitration clause; the motion to compel arbitration should have been granted.

In pertinent part, CPLR 7501 provides, "A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable * * * and confers jurisdiction on the courts of the state to enforce it." Furthermore, "[w]here there is no substantial question whether a valid agreement was made or complied with * * * the court shall direct the parties to arbitrate." (CPLR 7503 [a].) Thus, it is for the courts to determine, in the first instance, whether the parties have entered into a binding agreement to arbitrate. *(See, Sisters of St. John the Baptist, Providence Rest Convent v Phillips R. Geraghty Constructor,* 67 NY2d 997, 998.)

Plaintiff argues that it is not bound by the terms of the contract because its principal never signed it. As the Court of Appeals has noted, however, "The statute * * * simply requires 'A written agreement' to arbitrate. There is no requirement that the writing be signed 'so long as there is other proof that the parties actually agreed on it' [citation omitted]". *(Crawford v Merrill Lynch, Pierce, Fenner & Smith,* 35 NY2d 291, 299.) Nor is it of any consequence that the arbitration clause appears in the General Conditions, rather than the main contract. Plaintiff's proposal states that it had "carefully examined" and "understood" the designated documents, including the General Conditions, and that its bid was made "in strict compliance with the proposed Contract Documents".

Moreover, the AIA contract expressly provides, "The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference." Thus, under either version of the agreement, plaintiff's—the agreement allegedly completed by appellant's December 16, 1991 letter accepting plaintiff's November 18, 1991 proposal, as subsequently revised—or appellant's—the December 20, 1991 AIA contract, which plaintiff allegedly accepted by its January 2, 1992 letter—plaintiff agreed to arbitrate.

Instructive in this regard is *Matter of Level Export Corp. v Wolz, Aiken & Co.* (305 NY 82, 84). There, the buyer purchased textiles under a salesnote which stated that the salesnote " 'is subject to the provisions of STANDARD COTTON TEXTILE SALESNOTE which, by this reference, *is incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller."* The referred-to standard cotton textile salesnote contained an arbitration clause, which the Court of Appeals held, by virtue of the contract provisions, was, with the other terms of the standard cotton textile salesnote, integrated into each purchase agreement. In moving to stay arbitration, the buyer had argued, as plaintiff does here, that it was never informed that the standard cotton textile salesnote contained an arbitration clause. In rejecting this argument, the Court found that the buyer, an exporter of a wide variety of items including textiles to customers throughout the world, was assumed to have "dealt with the seller with knowledge that the provisions of the purchase agreements here involved were to have legal effect and were thus enforcible." *(Supra,* at 87.) Similarly here, plaintiff, an experienced contractor, is assumed to have dealt with appellant with knowledge of the provisions of the AIA contract and its General Conditions and their legal effect. More importantly though, plaintiff, even under its version of the agreement, by its proposal conceded that it had "carefully examined" and "understood" the contract documents, including the General Conditions, and that its bid was made "in strict compliance with the proposed Contract Documents." Thus, plaintiff is charged with knowledge of the contents of those documents, including the arbitration clause.

In any event, plaintiff is able to disown the AIA contract only by a distortion of the facts. It agreed to the AIA contract by its signed January 2, 1992 letter in which it acknowledged receipt of "the AIA signed contract" that, having arrived on

Christmas Eve "was a cause for extra joy for all of us", thanked appellant "for the entire company" and requested an amendment to the starting and completion dates, to which appellant agreed. In contrast to its reaction to receipt of the AIA contract, plaintiff did not even acknowledge receipt of appellant's December 16, 1991 letter, which, it contends, formed the contract by its acceptance of plaintiff's revised bid. Moreover, at a meeting between the parties on December 11, 1991, which led to appellant's December 16, 1991 letter, it was agreed that a formal contract for the project would be signed.

As this Court noted, albeit in the context of a Statute of Frauds issue but equally applicable here, "Signed and unsigned writings relating to the same transaction and containing all the essential terms of a contract may be read together to evidence a binding contract." *(Weiner & Co. v Teitelbaum,* 107 AD2d 583, citing *Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48.) Plaintiff's January 2, 1992 response to its receipt of the AIA contract signed by appellant not only belies its claim that it considered a contract to have already been formed as a result of appellant's December 16, 1991 letter but clearly indicates its acceptance of the AIA contract and related documents, subject only to the amendments concerning starting and completion dates. Contrary to plaintiff's argument, there is no evidence in this record that it refused to sign the AIA contract "because there were clauses and statements therein which had not been agreed upon." Any undisclosed reasons it might have had for not signing the contract are irrelevant. *(See, Conopco, Inc. v Wathne Ltd.,* 190 AD2d 587, 588.)

Moreover, plaintiff demonstrated its acceptance of the AIA contract by its conduct throughout the course of the work. It submitted 12 applications for payment on AIA forms in each of which it certified that the work described therein "has been completed in accordance with the [c]ontract [d]ocuments". Having performed the work in conformity with the contract documents and in accordance with their requirements and accepted the contract benefits, plaintiff cannot now assert that the AIA contract and its General Conditions do not apply. *(See, Rubin v Dairymen's League Coop. Assn.,* 259 App Div 23, 25-26, *affd* 284 NY 32.)

The only other issue presented on the arbitration issue is whether the controversy sought to be litigated falls within the terms of the broad arbitration clause at issue. That the bulk of the work for which plaintiff sought payment was the result

of change orders, which are governed by article 7 of the General Conditions of the contract, does not seem to be in dispute. Paragraph 7.1.3 provides, in part, that "[c]hanges in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly"; paragraph 7.3.1 states, in part, that "[t]he Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract." Thus, any change orders or directives are within the contract's express contemplation and are subject to arbitration.

Since the judicial inquiry ends once it is determined that a valid agreement to arbitrate exists and that the matter in controversy falls within the scope of the agreement *(see, Sisters of St. John the Baptist, Providence Rest Convent v Phillips R. Geraghty Constructor,* 67 NY2d, *supra,* at 998), the order granting summary judgment must be reversed and the judgment entered thereon vacated.

Accordingly, the order of the Supreme Court, New York County (Robert D. Lippmann, J.), entered May 14, 1993, denying defendant Secretary of State's motion to compel arbitration, should be reversed, on the law, with costs and disbursements, the motion granted and the parties directed to proceed to arbitration; the order of the same court and Justice, entered November 23, 1993, granting reargument or renewal of a prior order dated September 30, 1993, and which, upon reargument or renewal, reduced the amount of the previous award of partial summary judgment from $117,871 to $91,458, and the judgment of the same court and Justice, entered December 22, 1993, should be vacated, on the law, with costs and disbursements.

ROSENBERGER, ROSS, ASCH and TOM, JJ., concur.

Order, Supreme Court, New York County, entered May 14, 1993, reversed, on the law, the motion granted and the parties directed to proceed to arbitration; order, same court and Justice, entered November 23, 1993, and judgment, same court and Justice, entered December 22, 1993, vacated, on the law, with one bill of costs and disbursements on these appeals.