**T.R. MILLS CONTRACTORS, INC.**

v.

**WRH ENTERPRISES, LLC, et al.**

Court of Appeals of Tennessee,
at Jackson.

Feb. 13, 2002.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 23, 2002.

Ted M. Hayden, Memphis, Tennessee, for the appellant, T.R. Mills Contractors, Inc.

William M. Jeter, Memphis, Tennessee, for the appellees, WRH Enterprises, LLC and North South, LLC.

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

## OPINION

This appeal raises an issue of first impression in Tennessee, requiring us to address whether an arbitration clause in a written but unsigned contract is enforceable under Tennessee's version of the Uniform Arbitration Act. We join the majority of jurisdictions which have adopted the Act in holding that an arbitration clause contained in a written contract may be enforced absent a signature where the contract is otherwise found to be binding on the parties.

This appeal arises from an agreement between T.R. Mills Contractors, Inc. ("Mills") and North South, LLC and WRH Enterprises, LLC (WRH) to develop the

Cordova Ridge Subdivision. The basic facts are undisputed. In February of 1999, Mr. William Hyneman, the managing partner of North South, contacted Mr. Tommy Mills, president of Mills Contractors, regarding work to be done on the project. After preliminary discussions and the submission of line-item prices by Mills, Mills submitted a standard American Institute of Architects A101 Form Contract ("AIA contract") to Mr. Hyneman in late February or early March. The AIA form contract incorporates by reference the 1987 edition of AIA document A201 General Conditions of the Contract for Construction, which includes a clause requiring the parties to submit disputes to arbitration. At the time Mills submitted the contract, Mr. Hyneman was involved as a partner in North South with Crossman Communities. The partners subsequently dissolved North South, and Mr. Hyneman developed the project independently as WRH Enterprises. The AIA contract was signed by Mr. Mills, but neither Mr. Hyneman nor any representative of either North South or WRH signed the agreement.

On September 26, 2000, Mills filed a complaint in Shelby County Chancery Court to enforce his mechanics' and materialmen's lien and for other relief against WRH and North South.[1] On September 27, 2000, Mills moved to stay litigation for arbitration pursuant to the A201 General Conditions incorporated by reference into the AIA contract. WRH moved to preclude arbitration on January 30, 2001. After hearing the matter on February 12, 2001, the chancellor denied Mills' motion to stay for arbitration. The chancellor found, in pertinent part, "that there is no binding arbitration required in this case, in that

there is not an executed contract requiring arbitration, and while certain portions of the contract have been performed, this agreement between the parties is valid only to the extent of the portions of the contract that were actually performed." This appeal followed.

### Standard of Review

In a nonjury trial, our standard of review is *de novo*. *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d). With respect to the trial court's legal conclusions, however, there is no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000); Tenn. R.App. P. 13(d).

### Issue

The issue presented by the parties is whether the trial court erred in denying Mills' motion to stay litigation for arbitration. This requires us to determine, as an initial matter, whether this appeal is permissible absent a final judgment on the merits. If it is so permissible, we must then determine whether the parties were in fact operating under the AIA contract and, if they were, whether an arbitration clause contained in the A201 General Conditions, and incorporated by reference into the written AIA contract, is enforceable notwithstanding the fact that no representative of either North South or WRH signed the contract.

### Permissibility of Appeal

Generally, an appeal to this Court is permissible only from a final judgment

---

1. The original complaint named forty-seven other defendants shown by the Shelby County property records to possess an interest in the real property liened. These defendants were released without prejudice on October 30, 2000, in exchange for a Letter of Credit posted by WRH and North South.

adjudicating all the claims, rights and liabilities of all parties. Tenn. R.App. P. 3(a). The Uniform Arbitration Act ("UAA") as adopted in Tennessee and codified at sections 29–5–301 to –320 of the Tennessee Code, however, creates limited exceptions to this rule. Section 29–5–319 of the Tennessee Code provides:

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under § 29–5–303;

(2) An order granting an application to stay arbitration made under § 29–5–303(b);

. . . .

(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

An order to compel arbitration, however, is not appealable under the statute. *Peters v. Commonwealth Assoc.*, No. 03A01–9508–CV–00295, 1996 WL 93768, at *2 (Tenn.Ct.App. March 5, 1996) (*no perm. app. filed*).

 Mills' motion in the court below was titled "Motion to Stay For Arbitration." In the motion, Mills requested that the court below "enter an Order staying all proceedings . . . so that all disputes from which the lawsuit arises may be determined in arbitration. . . ." When construing a motion, courts looks to the substance rather than the form of the motion. *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn 1998). This approach gives the broadest effect to the underlying policy of the Tennessee Rules of Appellate Procedure that mere technicality of form be disregarded in order to assure a just and speedy determination of proceedings on the merits. *See* Tenn. R.App. P. 1, Advisory Commission Com-

ment. A motion to stay litigation for arbitration, however, is not substantively identical to a motion to compel arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). An order granting a stay of litigation compels the parties to do nothing. *Id.* As is the case here, if the party opposing arbitration is the party from whom payment or performance is demanded, an order granting a stay allows that party to withhold performance while refusing to arbitrate. *Id.* The party seeking performance has no way to proceed other than to return to the court seeking an order to compel arbitration. *Id.*

Paragraph five of Mills' motion to stay requests the court to enter an order compelling arbitration subject to the arbitration provision of the contract and pursuant to section 29–5–303(d) of the Tennessee Code. Reading the motion as a whole, however, we will consider it a motion to stay litigation and compel arbitration. As such, the order denying this motion is appealable under section 29–5–319 of the Tennessee Code.[2]

*Enforceability of the AIA Contract*

 It is well established in Tennessee that, in order to be enforceable, a contract must represent mutual assent to its terms, be supported by sufficient consideration, be free from fraud and undue influence, be sufficiently definite, and must not be contrary to public policy. *Johnson v. Central Nat'l Ins. Co.*, 210 Tenn. 24, 356 S.W.2d 277, 281 (1961). Such a contract can be expressed or implied, written or oral. *Id.* A written contract does not have to be signed to be binding on the parties. *See Remco Equip. Sales, Inc. v. Manz*, 952 S.W.2d 437, 439 (Tenn.App.1997). Similar-

---

**2.** As noted above, had the court below granted the motion to compel arbitration, no appeal could be had until after an adjudication on the merits.

ly, when an agreement is reduced to writing but is signed by only one of the parties, it is binding on the non-signing party if that party has manifested consent to its terms. *Southern Motor Car Co. v. Talliaferro,* 14 Tenn.App. 276, 1931 WL 1595, at *3, (Tenn.Ct.App. March 5, 1932) (*cert.denied*). What is critical is mutual assent to be bound. In determining mutuality of assent, courts use an objective standard based on the manifestations of the parties. 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 30:6 (4th ed.1999). Assent can be established by the course of dealing of the parties. *Remco Equip. Sales,* 952 S.W.2d at 439. In determining whether a contract exists, the court also can consider relevant evidence such as whether the parties performed under its terms. 11 Williston & Lord, § 30:3. When a party who has not signed a contract has nonetheless manifested consent by performing under it and making payments conforming to its terms, that party is estopped from denying that the parties had a meeting of the minds sufficient to bind them to the contract. *R.J. Betterton Management Serv., Inc. v. Whittemore,* 769 S.W.2d 214, 216 (Tenn.Ct. App.1989).

WRH asserts that the trial court found that there was no binding written contract between North South/WRH and Mills. We disagree with WRH's interpretation of this portion of the trial court's order. We interpret the trial court's order to state, in essence, that the parties did in fact perform under the written AIA contract, that the contract was valid insofar as it was performed, but that the arbitration clause was not binding because the contract was unsigned. Regardless of which interpretation of the trial court's order is correct, after reviewing the record, including testimony of Mr. Mills, Mr. Hyneman, and members of their staffs, we find that the evidence preponderates in support of a finding that the parties performed under the AIA contract and manifested assent to its terms.

It is undisputed that Mills signed and delivered the AIA contract to Mr. Hyneman in response to Mr. Hyneman's request for a bid on the Cordova Ridge project, but that Mr. Hyneman never signed the contract. It is also undisputed that Mills previously had worked for Mr. Hyneman on other projects, that written AIA contracts also were submitted for these projects, and that these contracts were left unsigned by Mr. Hyneman. In previous dealings, the parties performed as anticipated, and no dispute arose between them.

Mr. Hyneman testified that he does not normally use AIA contracts, but that he did execute them in projects involving other partners. Both Mr. Mills and Mr. Hyneman testified that at the time Mills submitted the AIA contract, the parties contemplated that Cordova Ridge project was to be developed by Mr. Hyneman and his partner in North South, Crossman Communities. Mr. Mills testified that Mr. Hyneman requested a written AIA contract because his partner in the Cordova Ridge project required such a contract. Mr. Hyneman testified that he did not deny, but did not recall, whether he told Mr. Mills that a written contract was required.

Ms. Sandy Lenoir, executive assistant to Mr. Hyneman, testified by deposition that she had seen the written contracts between Mills and Mr. Hyneman, and that she was familiar with the AIA contract. Ms. Lenoir stated, "[a]ll our general contractors bring [the AIA form contract]." Both Mr. Mills and Ms. Deborah Russell, a Mills' employee, testified that Ms. Caresse Mills called from Mr. Hyneman's office on

two occasions to request additional copies of the AIA contract submitted by Mills, and that Ms. Russell faxed the copies to Mr. Hyneman's office. Ms. Mills testified that she did not recall whether she had requested the copies.

It is undisputed that Mr. Mills submitted AIA form payment applications for payment on the project, and that he was paid on them. Mr. Mills testified that when questions arose regarding the budget for the project, he and Mr. Donnie Culver, the apparent project manager of the Cordova Ridge project, referred to the AIA contract for cost amounts. This testimony is undisputed, although Mr. Hyneman stated that these costs were based on a line-item bid submitted by Mr. Mills prior to the contract.

This record clearly evidences assent to the AIA contract. The parties performed under it in this project and had performed according to its terms in prior dealings. Mr. Hyneman knew that Mills had submitted the written contract in this case, and did nothing to suggest that he did not assent to its terms. Additionally, Mr. Hyneman had executed the AIA form contract on other projects, and so had reason to know its terms and conditions. We accordingly find that the parties manifested assent to the terms provided in the AIA form contract.

*Enforcement of an Arbitration Clause in a Written but Unsigned Contract*

■ Finding that the parties were bound by the written but unsigned AIA contract, we next address the seminal issue in this case, whether the trial court erred in holding that because the written AIA contract was unsigned by Mr. Hyneman, it was insufficient to bind the parties to the arbitration provision which was incorporated by reference as part of the A201 General Conditions. We are thus called upon to decide whether under the Uniform Arbitration Act as adopted in Tennessee, a written agreement to submit disputes to arbitration also must be signed by the parties to be enforceable.

■ This is an issue of first impression in Tennessee. As such, it requires us to interpret the statutory provisions governing the enforcement of arbitration clauses. When interpreting a statute, this Court's primary objective is to effectuate the purpose of the legislature. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn.2000). Insofar as possible, the intent of the legislature should be determined by the natural and ordinary meaning of the words used in the statute, and not by a construction that is forced or which limits or extends the meaning. *Id.* Likewise, the Court must seek to ascertain the intended scope of the statute, neither extending nor restricting that intended by the legislature. *State v. Morrow*, 75 S.W.3d 919, 921 (Tenn., 2002) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn.1993)). Our interpretation must not render any part of the statute "inoperative, superfluous, void or insignificant." *Id.* (citing *Tidwell v. Collins*, 522 S.W.2d 674, 676–77 (Tenn.1975)). Rather, we construe statutory provisions within the context of the entire statute, giving effect to its over-arching purpose. *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 151 (Tenn.Ct.App.2001).

In 1955, the National Conference on Uniform State Laws passed the Uniform Arbitration Act, which has since been adopted by a majority of states, including Tennessee. *Buraczynski v. Eyring*, 919 S.W.2d 314, 317 (Tenn.1996). Codified at sections 29–5–301 to 320 of the Tennessee Code, and titled the Uniform Arbitration Act ("the Act"), the statute reflects a judicial and legislative policy favoring the enforcement of arbitration provisions. *Id.* The Tennessee Code provides:

A *written* agreement to submit any existing controversy to arbitration or a provision in a *written* contract to submit to arbitration any controversy thereafter arising between parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that for contracts relating to farm property, structures or goods, or to property or structures utilized as a residence of a party, the clause providing for arbitration shall be additionally signed or initialed by the parties.

Tenn.Code Ann. § 29–5–302(a)(2000)(emphasis added).

 In permitting and indeed encouraging arbitration of disputes, the legislature sought to facilitate and promote a quicker, more cost effective, less cumbersome, yet binding means of dispute resolution. *Buraczynski,* 919 S.W.2d at 317; *Dewitt v. Al–Haddad,* No. 89–394–II, 1990 WL 50727, at *7 (Tenn.Ct.App. April 25, 1990) (*no perm. app. filed*). An agreement to arbitrate does not affect the rights and duties of the parties. It simply shifts the forum of dispute settlement. *Buraczynski,* 919 S.W.2d at 319. Unless a contract containing the arbitration clause is otherwise revocable upon grounds existing at law or in equity, such as fraud or unconscionability, the terms of an arbitration provision are binding on the parties. *D & E Constr. Co. v. Robert J. Denley Co.,* 38 S.W.3d 513, 518 (Tenn.2001); *see Buraczynski,* 919 S.W.2d at 320. Additionally, section 29–5–303(a) requires that where parties have become bound by a written agreement to arbitrate disputes between them, and one party refuses to arbitrate, "the court *shall* order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party.... " Tenn. Code Ann. § 29–5–303(a)(2000)(emphasis added). Thus if the court finds a valid written agreement to arbitrate, whether to order the parties into arbitration is not a matter of discretion for the court, but is statutorily required.

In the present case, the court found that while a written agreement existed between the parties, the arbitration clause incorporated by reference into the agreement was not binding because the contract was not signed by Mr. Hyneman. It is in this determination that the court below erred. The Act requires only that an agreement to arbitrate be written, it does not further require it to be signed.

 This interpretation is consistent with that of other jurisdictions which have adopted the UAA and which have construed the identical language in § 2 of the Federal Arbitration Act ("FAA") codified at 9 U.S.C.[3] The requirement that an agreement be in writing to be enforceable does not provide a "built-in Statute of Frauds." *Fisser v. International Bank,* 282 F.2d 231, 233 (C.A.2 1960). Although the construction of uniform acts by other jurisdictions is not binding upon the courts of this State, our Supreme Court has noted that "the objective of uniformity cannot be achieved by ignoring utterances of other jurisdictions." *Holiday Inns, Inc. v. Olsen,* 692 S.W.2d 850, 853 (Tenn.1985). Except as otherwise provided within the Act itself, as modified by the legislature for application in Tennessee, the Act calls upon this Court to construe it so as to

---

**3.** *See e.g. Brumm v. McDonald & Company Sec., Inc.,* 78 Ohio App.3d 96, 603 N.E.2d 1141, 1145 (1992); *Todd Habermann Constr., Inc. v. Epstein,* 70 F.Supp.2d 1170, 1174 (D.Colo., 1999); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987).

conform to the majority of our sister jurisdictions. *Buraczynski v. Eyring*, 919 S.W.2d 314, 318 (Tenn.1996). Section 29–5–320 reads: "This part shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." Tenn.Code Ann. § 29–5–320 (2000).

WRH contends that Tennessee's version of the Act precludes a holding on this issue that is consistent with other jurisdictions. WRH cites section 29–5–302(a) of the Tennessee Code which state: "provided, that for contracts relating to farm property, structures or goods, or to property or structures utilized as a residence of a party, the clause providing for arbitration shall be *additionally* signed or initialed by the parties." Tenn.Code Ann. § 29–5–302(a) (2000) (emphasis added). WRH submits that the phrase stands for the proposition that the legislature intended that in Tennessee written agreements to arbitrate must be signed to be enforceable. As we understand this argument, WRH interprets the word "additionally" in the provision relating to farm or residential property to mean that all agreements to arbitrate must be signed, and that in the context of farm or residential property the arbitration clause must be separately signed or initialed. We disagree.

Tennessee's version of the Uniform Arbitration Act includes several provisions which this Court has characterized as "safeguards, to prevent parties from being victimized by the very finality that makes arbitration the procedure of choice for certain types of disputes." *Smith v. Smith*, 989 S.W.2d 346, 348 (Tenn.Ct.App.1998). Such safeguards include section 29–5–307, providing that a party may not waive his right to representation by an attorney at any proceeding or hearing, and the provision in section 29–5–302, at issue here, that an agreement to submit disputes must be in writing. *Id.* Tenn.Code Ann. §§ 29–5–307, 29–5–302 (2000).

While we acknowledge that other jurisdictions adopting the Act have not included the additional provision relating to farm and residential property in their statutory versions, we disagree that this language necessitates that in Tennessee a written agreement to arbitrate must also be signed by the parties to be binding. This Court has interpreted this clause to reflect a legislative intent to provide a special safeguard in agreements pertaining to residential and farm property. *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 151 (Tenn.Ct.App.2001). In *Merrimack*, we addressed this clause in the context of differentiating between arbitration proceedings and appraisal proceedings. *See generally id.* We held that the two proceedings were distinct, and noted that even if an appraisal clause in a homeowner's insurance policy could be construed as an agreement to submit to arbitration, the clause could not be enforced because it was not separately signed or initialed. *Id.* at 150–51. Thus while the written agreement could be enforced with or without a signature, an arbitration clause could not *because* the agreement involved residential property especially safeguarded by the statute. *Id.* We do not construe this safeguard to require that all contracts containing arbitration clauses must be signed in order for the clause to be enforceable. Rather, we construe the statute as requiring that in situations involving farm or residential property as described in the statute, arbitration clauses must be separately signed or initialed *in addition to being written*, thereby ensuring notice of the clause in these particularized cases.

WRH directs our attention to a footnote in a Maryland opinion addressing this issue, which suggests that the Tennessee statute may be unique in requiring that

agreements to arbitrate must be signed to be enforceable. *See Stephen L. Messersmith, Inc. v. Barclay Townhouse Assoc.,* 313 Md. 652, 547 A.2d 1048, 1050 n. 1 (App.1988). We reject this interpretation. As in the other states which have adopted the Uniform Arbitration Act, including Maryland, in Tennessee, otherwise binding written contracts need not be signed in order for an arbitration clause contained therein to be enforceable.

### Sufficiency of an Arbitration Clause Which is Incorporated by Reference

 In construing the scope of a valid agreement to arbitrate in the context of § 2 of the Federal Arbitration Act, the Tennessee Supreme Court noted that while the purpose of the FAA is to insure enforceability of such agreements, parties nonetheless "cannot be forced to arbitrate claims that they did not agree to arbitrate." *Frizzell Constr. Co. v. Gatlinburg, L.L.C.,* 9 S.W.3d 79, 84 (Tenn.1999). Parties may structure and limit arbitration agreements as they see fit. *Id.* (citing *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). In deciding whether parties agreed to arbitrate a particular issue, courts should apply ordinary state law principles. *Id.* at 85. The court should ascertain the intention of the parties "by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." *Id.* (quoting *Penske Truck Leasing Co. v. Huddleston,* 795 S.W.2d 669, 671 (Tenn. 1990)).

In this case, Mr. Hyneman contends that he never agreed to submit to arbitration, that it has never been his practice to arbitrate, that he did not read the written agreement submitted by Mills, and that he was unaware that the A201 General Conditions contained an arbitration clause. Having found that WRH assented to the AIA form contract, we next consider whether the incorporation by reference of the AIA A201 General Conditions, without specific reference to an arbitration clause, is sufficient to bind WRH to arbitration. Applying ordinary contract principles to the circumstances here, we are satisfied that the arbitration provision is part of the binding written contract in this situation and is therefore enforceable.

 Courts addressing this issue have held that a written but indirect agreement to arbitrate is enforceable as long as it is clear. David D. Siegel, N.Y. Prac., *Arbitration* § 588 (3rd ed.1999). When there is a clear relationship between a written agreement containing an arbitration clause and a written supplemental agreement that does not contain such a clause, disputes arising under the supplemental agreement will be subject to arbitration under the original agreement. *Id.* When a written contract makes the terms of another written instrument a part of it, the two instruments are construed together as the agreement between the parties. *McCall v. Towne Square, Inc.,* 503 S.W.2d 180, 183 (Tenn.1973). Applying these ordinary contract principles, we hold that the incorporation by reference of the A201 General Conditions, which contain an arbitration clause, was sufficient to bind these parties to arbitration.

This holding is consistent with those of other jurisdictions addressing this issue. The Supreme Court of New York, Appellate Division, addressed a factually similar situation in *Liberty Management & Construction Ltd. v. Fifth Avenue & Sixty–Sixth Street Corp.,* 208 A.D.2d 73, 620

N.Y.S.2d 827 (1995). In *Liberty Management,* the plaintiff/appellee argued that it was not bound to arbitration by a written AIA form contract which, like the contract at issue here, provided: "The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference," because he had not signed it. *Id.* at 75, 620 N.Y.S.2d 827. As in the present case, the contract was signed only by the party seeking to compel arbitration, the parties followed payment procedures consistent with the AIA contract, and the plaintiff sought foreclosure of a mechanic's lien. *Id.* The New York court held that a written agreement to arbitrate did not have to be signed to be binding, and that it was of no consequence "that the arbitration clause appears in the General Conditions, rather than the main contract." *Id.* at 77, 620 N.Y.S.2d 827. The New York court stated, "plaintiff, an experienced contractor, is assumed to have dealt with appellant with knowledge of the provisions of the AIA contract and its General Conditions and their legal effect." *Id.* at 78, 620 N.Y.S.2d 827.

The New York court's reasoning applies equally well in this case. Mr. Hyneman's contention that he should not be bound to an arbitration clause of which he was unaware because he never read the A201 General Conditions is without merit. Mr. Hyneman is an experienced developer who has testified to using the AIA standard form contract on previous projects. Moreover, the incorporation by reference of the A201 General Conditions is not hidden in the AIA contract or in indecipherably small print such that it would be unfair or unreasonable to expect Mr. Hyneman to be aware of the provision. Notice that the AIA contract incorporates the General Conditions is clearly provided near the top of the contract. Mr. Hyneman cannot disavow the terms of the contract simply because he failed to read it.

### Conclusion

We join the majority of jurisdictions which have adopted the Uniform Arbitration Act in holding that an otherwise enforceable written agreement containing an arbitration clause need not be signed in order for the arbitration clause to be enforceable. We find that the parties in this case manifested assent to the written AIA form contract, and hold that the incorporation by reference of the AIA A201 General Conditions, which include an arbitration clause, binds these parties to arbitration. Accordingly, arbitration is the appropriate means of dispute resolution in this case. The judgment of the trial court denying the motion of T.R. Mills Contractors, Inc. to stay this action pending arbitration and granting the motion of WRH Enterprises, LLC is reversed. This case is remanded for further proceedings consistent with this opinion.

Costs of this appeal are taxed to the Appellees, WRH Enterprises, LLC, and North South, LLC., for which execution may issue if necessary.