IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 11, 2008 Session

## STATE OF TENNESSEE EX REL. BILLIE MARTIN v. GREGORY KALMON

**Appeal from the Fourth Circuit Court for Knox County**
**No. 67258     Bill Swann, Judge**

**No. E2007-00770-COA-R3-CV - FILED APRIL 23, 2008**

This Uniform Interstate Family Support Act ("UIFSA") case was dismissed by the Trial Court after it concluded that it lost subject matter jurisdiction to proceed with this case once a voluntary dismissal was taken in the initiating tribunal in Maryland. The Trial Court concluded that the present case also must be dismissed because there had been at least two previous voluntary dismissals and the dismissal by the Maryland tribunal operated to bar the present case pursuant to Tenn. R. Civ. P. 41.01(2). We hold that the Trial Court retained subject matter jurisdiction notwithstanding the voluntary dismissal of the petition by the initiating tribunal. We further conclude that the present case is not barred by the provisions of Tenn. R. Civ. P. 41.01(2). Accordingly, the judgment of the Trial Court is vacated and this cause is remanded for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Fourth Circuit Court Vacated; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, and Juan G. Villaseñor, Assistant Attorney General, Nashville, Tennessee, for the Appellant, State of Tennessee ex rel. Billie Martin.

J. Terry Holland, Knoxville, Tennessee, for the Appellee, Gregory Kalmon.

# OPINION

## Background

This appeal involves whether the Trial Court, with the State of Tennessee being a responding state pursuant to the UIFSA, retained subject matter jurisdiction to prosecute the current petition after the initiating state, the State of Maryland, has voluntarily dismissed the petition pending in that jurisdiction because the mother no longer lives there. If the Trial Court did retain subject matter jurisdiction, the next issue is whether the petition to establish paternity and child support is barred pursuant to Tenn. R. Civ. P. 41.01(2) due to the number of prior voluntary dismissals.

In October of 1994, the State of Tennessee received a request for enforcement of child support from the State of Missouri pursuant to the Uniform Reciprocal Enforcement of Support Act ("URESA"). The State of Tennessee then filed a petition on behalf of Billie Martin ("Mother") and sought a determination that Gregory Kalmon ("Father")[1] was the biological father of C.L.M. ("the Child"), who was born on November 11, 1982. The petition also sought to establish child support payments. Father responded to the petition, denying that the State of Missouri had jurisdiction to file the request with the State of Tennessee and further denying that he was the biological father of the Child. While the petition was pending, a DNA test was taken by the parties and the Child in the State of Missouri. The results established a 99.52% chance that Father was the Child's biological father. Notwithstanding the results of the DNA test, in May of 1997, the State of Missouri voluntarily dismissed the action pending in that state and then filed a motion to have the Tennessee case dismissed without prejudice. An order was entered granting that request in June of 1997.

Although the record on appeal is lacking in many respects, the record does establish that a paternity and child support action also was filed by the State of Florida. The Florida petition apparently never was sent to Tennessee pursuant to URESA, and the Florida action was voluntarily dismissed in 1997.

In October of 1999, the State of Tennessee received a new request for enforcement once again seeking to have Father established as C.L.M.'s biological father and to set child support payments. The State of Tennessee then filed a petition to establish parentage and child support payments pursuant to the UIFSA.[2] The initiating agency for the UIFSA petition was the State of Maryland. It is this 1999 petition that is at issue in this appeal.

While the 1999 petition was pending, the Trial Court determined that another DNA test should be conducted due to irregularities with the procedures utilized with the first test in

---

[1] Because two DNA tests conducted throughout the course of these proceedings established that Kalmon was the biological father of the Child, we will refer to Kalmon as "Father."

[2] In 1997, the Tennessee General Assembly repealed the Uniform Reciprocal Enforcement of Support Act and replaced it with the Uniform Interstate Family Support Act, Tenn. Code Ann. § 36-5-2001, *et seq.*

-2-

Missouri. As with the first DNA test, the second DNA test established that Father was the biological father of C.L.M. The Trial Court eventually entered an order declaring Father to be the biological father of C.L.M.

In June of 2000, Father filed a motion to dismiss the 1999 petition pending in Tennessee. Father claimed that, under both Maryland and Tennessee law, because at least two if not three paternity and child support actions already had been filed and dismissed, the present claim could not proceed. Father relied, in part, on the provisions of Tenn. R. Civ. P. 41.01 which provide as follows:

> **Rule 41.01. Voluntary Dismissal – Effect Thereof.** – (1) Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties, and if a party has not already been served with a summons and complaint, the plaintiff shall also serve a copy of the complaint on that party; or by an oral notice of dismissal made in open court during the trial of a cause; or in jury trials at any time before the jury retires to consider its verdict and prior to the ruling of the court sustaining a motion for a directed verdict. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff.
>
> (2) Notwithstanding the provisions of the preceding paragraph, a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has twice dismissed in any court an action based on or including the same claim.…

There were several hearings and rulings on the motion to dismiss. The motion to dismiss initially was heard by the child support referee, who determined that the motion to dismiss should be denied. The referee later reversed that ruling and determined that the motion to dismiss should be granted. On appeal to the Trial Court, the Trial Court reversed the latter ruling by the referee. According to the Trial Court:

> Touching upon dismissals, the Court does find that the Missouri dismissal and the Tennessee dismissal are one act, and that Florida is the second one, if that is relevant, and I'll come to that in a moment. If that is relevant, this whole line of argument that derives from the Tennessee Rule of Civil Procedure 41, about a third

dismissal, if that is relevant, then, there are only two dismissals, and it's possible to proceed in Tennessee, even after the two dismissals, under our Rules of Civil Procedure. And it is Tennessee law that governs this case.

Secondly, additionally, and independently, the Court holds that this category of litigation presents a parent, seeking to establish paternity, with an impossible situation. If the dismissals entered in consecutive states, to wit: The mother, seeking to establish paternity, commences an action in state one; and then, pursuing her employment, moves to state two. State one then dismisses, because she's no longer a resident of the state. If that then happens in state two, and she moves to state three and to state four and state five, she will be barred under a traditional application. Nonsense. These are administrative non-suits.

\* \* \*

It is a ludicrous result that a mother, seeking to establish paternity, must stay in one state or, indeed, two states.…

Indeed, the overriding interest to be protected here is the establishment of paternity or the removal of the onus of the suggestion of paternity from someone who has been named as the putative father. That is society's great interest. It is the interest of the child, and it is the interest of the birth mother, and, it is the interest of the man who has been named.

While the Tennessee litigation was proceeding, events were unfolding in Maryland as well. Specifically, Father filed a motion to dismiss in the Maryland court claiming that, under Maryland law, the previous voluntary dismissals operated as a bar to the litigation from proceeding in that state. The motion to dismiss was granted and the Maryland case was dismissed. A motion to set aside the dismissal then was filed and granted. Thus, at that particular point in time, the Maryland case was still active. Father then filed a motion to reconsider the setting aside of the dismissal. Following a hearing, the Circuit Court for Hartford, Maryland, filed a Memorandum Opinion reinstating the previous dismissal of the case. The Maryland court discussed the relevant case history, including the previous dismissal of the URESA petitions in both Missouri and Florida. As part of its reasoning for dismissing the case, the Maryland court noted that "the State of Tennessee is willing to move forward with whatever claim the Plaintiff might have." The Maryland court also noted that any connection the litigation might have had to the State of Maryland was

-4-

"tenuous" given that Father had never lived in Maryland and Mother had lived in Maryland for only a few months in the preceding seven years.[3]

After the State of Maryland dismissed the petition pending in that state, Father filed a renewed motion to dismiss the current petition pending in Tennessee. Father essentially raised two arguments. First, he claimed that because Maryland, the initiating state, had dismissed the petition, Tennessee, as the responding state, lost jurisdiction over the claim. Second, Father argued that there had been a total of at least three, if not four, voluntary dismissals and, pursuant to Tenn. R. Civ. P. 41.01(2), the present petition must be dismissed.

A hearing was conducted on Father's renewed motion to dismiss and the referee granted the motion. The referee reasoned that due to the latest dismissal of the Maryland petition, there now had been three voluntary dismissals and Tenn. R. Civ. P. 41.01(2) mandated dismissal. The referee also determined that Tennessee, as a responding state pursuant to the UIFSA, lost its jurisdiction once the initiating state entered a voluntary dismissal. On appeal to the Trial Court, the Trial Court confirmed the referee's recommendations and findings. This appeal followed.

The State raises several issues. The State argues that the Trial Court erred when it confirmed the referee's recommendation to dismiss this case based on: (1) there being a lack of subject matter jurisdiction once Maryland, the initiating state, voluntarily dismissed the UIFSA petition; and (2) there being three prior voluntary dismissals resulting in prosecution of this case being prohibited by Tenn. R. Civ. P. 41.01(2). As a third issue, the State claims the Trial Court erred by not requiring Father to pay retroactive child support dating back to the Child's birth. Father asserts that the Trial Court got everything right and this appeal is frivolous.

**Discussion**

The first two issues raised by the State involve questions of law. With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first will address the State's claim that the Trial Court erred when it determined that it lost subject matter jurisdiction to proceed with this case once the companion proceeding was voluntarily dismissed by the initiating tribunal in Maryland.

In *State ex rel. McPeek v. Long*, No. E2005-01670-COA-R3-CV, 2006 WL 1163077 (Tenn. Ct. App. Apr. 28, 2006), *no appl. perm. appeal filed*, we observed:

---

[3] While Tenn. R. Civ. P. 41.01(2) allows two previous voluntary dismissals before the third voluntary dismissal is considered "an adjudication on the merits," Maryland only allows one previous voluntary dismissal. The Maryland court quoted Maryland Rule 2-506(c) which provides that a "notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim."

The concept of jurisdiction involves a court's authority to adjudicate a particular controversy. *See Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977). In order to acquire jurisdiction, a court must have jurisdiction not only over the parties but also over the subject matter of the proceeding. The concept of subject matter jurisdiction concerns a particular court's authority to hear a particular type of case. *See Meighan v. U.S. Sprint Comm. Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988). It relates to the nature of the cause of action and the relief sought, *see Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994), and can only be conferred by the Constitution of Tennessee or by statute. *See Kane v. Kane*, 547 S.W.2d at 560; *Brown v. Brown*, 198 Tenn. 600, 618-19, 281 S.W.2d 492, 501 (1955).

*McPeek*, 2006 WL 1163077, at *1-2 (quoting *State ex rel. Whitehead v. Thompson*, No. 01A01-9511-CH-00538, 1997 WL 749465, at *2 (Tenn. Ct. App. Dec. 5, 1997)).

The UIFSA is comprehensive legislation aimed at establishing paternity and child support payments when parents live is different states. Our reading of the UIFSA convinces us that the relationship between the initiating tribunal and the responding tribunal is not as intertwined as claimed by Father. In reaching this conclusion, we note that the role of the initiating state under the UIFSA is, in large part, ministerial. The Comments to Official Text[4] for Tenn. Code Ann. § 36-5-2304 (2005) specifically acknowledge that under the UIFSA, "the role of the initiating tribunal clearly consists of the ministerial function of forwarding the documents." In addition, the UIFSA acknowledges that there may be times when the initiating tribunal will be bypassed altogether. The Comments to Official Text for Tenn. Code Ann. § 36-5-2101 (2005) provide, in pertinent part, as follows:

Subsections (7) and (8) define "initiating State" and "initiating tribunal" similarly to RURESA § 2(d). It is important to note, however, that UIFSA permits the direct filing of an interstate action in the responding State without an initial filing in an initiating tribunal. Thus, in addition to the traditional resort to a local

---

[4] In *Letellier v. Letellier*, 40 S.W.3d 490, at 493 n.2 (Tenn. 2001), our Supreme Court explained the "very persuasive" effect to be given the Official Comments to the UIFSA as follows:

We give substantial deference to the "Comments to Official Text" contained throughout UIFSA. "The official comments, while not binding, are very persuasive in interpreting the statute to which they apply." *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113, 116 (Tenn. Ct. App. 1997).

-6-

"initiating tribunal," a petitioner in one State may seek to establish a support order in a second State by either filing in the responding [S]tate's tribunal or by directly seeking the assistance of the support enforcement agency in the second State.

\* \* \*

The definitions of "responding State" and "responding tribunal" in Subsections (16) and (17) accommodate the direct filing of a petition under UIFSA without the intervention of an initiating tribunal. Both definitions acknowledge the possibility that there may be a responding State or tribunal in a situation where there is no initiating State or tribunal.

Tenn. Code Ann. § 36-5-2203 (2005) provides that a tribunal in Tennessee may serve as an initiating tribunal to forward proceedings to another state, or as a responding tribunal for actions initiated in another state. The Comments to Official Text again acknowledge that:

Under UIFSA a tribunal may serve as a responding tribunal even when there is no initiating tribunal in another State. This accommodates the direct filing of an action in a responding tribunal by a nonresident.

In *State ex rel. Irwin v. Mabalot*, No. M2004-00614-COA-R3-CV, 2005 WL 3416293 (Tenn. Ct. App. Dec. 13, 2005), *no appl. perm. appeal filed*, this Court observed:

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000). Courts must do so without unduly restricting or expanding a statute beyond its intended scope. *In re C.K.G., C.A.G., & C.L.C.*, 173 S.W.3d 714, 721-22 (Tenn. 2005). To determine legislative intent, one must look to the natural and ordinary meaning of the language used in the statute itself. We must examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *T.R. Mills Contractors, Inc. v. WRH Enterprises*, LLC, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). Statutes relating to the same subject matter or

having a common purpose are to be construed together. *In re C.K.G., C.A.G., & C.L.G.*, 173 S.W.3d at 722.

> As our Supreme Court has said, "[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001), citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995). Courts must look to a statute's language, subject matter, objective or purpose, and the wrong it seeks to remedy or prevent. *In re C.K.G., C.A.G., & C.L.G.*, 173 S.W.3d at 722. Courts are also instructed to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn. Ct. App. 1998). Courts must presume that the General Assembly selected these words deliberately, *Tenn. Manufactured Housing Ass'n. v. Metropolitan Gov't.*, 798 S.W.2d 254, 257 (Tenn. App. 1990), and that the use of these words conveys some intent and carries meaning and purpose. *State v. Levandowski*, 955 S.W.2d 603, 606 (Tenn. 1997); *Tennessee Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn. 1984).

*Mabalot*, 2005 WL 3416293, at *6.

Since the UIFSA specifically contemplates that an action to establish paternity and child support can be filed directly in the responding state, it necessarily follows that the responding state's subject matter jurisdiction is not dependent upon whether an action also was filed in the initiating state. If an action in the responding state was totally dependent on whether there also was an action pending in the initiating state, as Father claims, this would negate the provisions of the UIFSA which allow actions to be filed directly in the responding state. It is clear that the State of Tennessee had both personal jurisdiction over Father and subject matter jurisdiction over the proceedings when this case was initiated in Tennessee. This result is not changed simply because the initiating state later deemed it appropriate under the procedural laws of that state to dismiss the petition that was pending in that venue. We hold that the Trial Court did not lose subject matter jurisdiction simply because the initiating state voluntarily dismissed the action pending in that state. As a practical matter, when the Maryland proceeding was dismissed, the State of Tennessee had to decide whether it wanted to continue to pursue the action against Father. The State of Tennessee certainly could have decided to dismiss its case, but we hold that it was not required to do so as the Trial Court retained subject matter jurisdiction.

The next issue is whether the present action is barred pursuant to Tenn. R. Civ. P. 41.01(2). As set forth previously, Tenn. R. Civ. P. 41.01(2) provides that "a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has twice dismissed in any court an action based on or including the same claim."

-8-

When Father's initial motion to dismiss was denied by the Trial Court, the Trial Court reasoned that in situations where a petition to establish paternity and child support is dismissed in both the initiating state and the responding state, the dismissals should collectively count as one dismissal for purposes of Tenn. R. Civ. P. 41.01(2). We agree with the Trial Court's analysis and conclude that the 1997 dismissals of both the Missouri and Tennessee petitions should be deemed as one dismissal for purposes of Rule 41.01(2). The 1997 dismissal of the Florida petition would count as a second dismissal.

The question thus becomes whether the dismissal of the petition in Maryland counts as a third voluntary dismissal. We conclude that in order for there to have been a third dismissal, the petitions would have had to have been dismissed in both Maryland and Tennessee. Again, we note that the role of the initiating state is in large part ministerial. The substantive petition is the petition filed in the responding state. We hold that unless and until the present petition pending in Tennessee has been voluntarily dismissed, there is no third dismissal for purposes of Tenn. R. Civ. P. 41.01(2). This result is entirely consistent with the purposes behind the UIFSA. To hold otherwise would result in premature final dismissals of many UIFSA child support actions because dismissals by the initiating and responding tribunals would be counted as "two" dismissals for purposes of Rule 41.01(2) and similar rules in other states.

The State's final issue is its claim that Father should be required to pay child support retroactive to the date of the Child's birth. Because the Trial Court never reached this issue given its disposition of the two issues discussed above, we remand this case to the Trial Court for resolution of this issue and any other issues that may arise from our holdings discussed above.

Given our resolution of the first two issues, we obviously reject Father's argument that the State's appeal is frivolous.

## **Conclusion**

The judgment of the Trial Court is vacated and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the cost below. Costs on appeal are taxed to the Appellee, Gregory Kalmon.

_____
D. MICHAEL SWINEY, JUDGE