IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2002 Session

# RIVER LINKS AT DEER CREEK, LLC v. JOSEPH MELZ, ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 01545      R.E. Lee Davies, Judge**

---

**No. M2002-00043-COA-R3-CV - Filed December 31, 2002**

---

The developer of a golf course brought a fraud complaint against the property owner who furnished the land for the course, and against the companies he controlled. The defendants argued that the plaintiff's remedies were limited by the arbitration clauses in two of the three contracts that defined the relationship between them. The trial court ruled that the arbitration clauses were not applicable to the plaintiff's claims. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and TOM E. GRAY, SP. J., joined.

Phillip North and R.J. Pursell, Nashville, Tennessee, for the appellants, Joseph Melz, Deer Creek Golf Interests, LLC and Deer Creek Construction, Inc.

Nancy S. Jones and Caroline Thomas Trost, Nashville, Tennessee, for the appellee, River Links at Deer Creek, LLC.

## OPINION

### I. AN AMBITIOUS PROJECT

The parties in this case wished to develop an eighteen-hole championship-caliber golf course and an adjoining residential community in Spring Hill, Tennessee. To accomplish their purposes, they entered into two contracts: a Development Agreement, which was executed on May 1, 2000, and an Operating Agreement under the Tennessee Limited Liability Company Act, Tenn. Code Ann. § 48-201-101, et seq., which was executed shortly thereafter. Both of these agreements contain provisions that claims and disputes between the parties have to be settled through binding arbitration.

River Links at Deer Creek, LLC, (River Links) was to be the developer and owner of the golf course. The Operating Agreement set out the terms whereby River Links was to regulated. Joseph Melz was a member of the Board of Managers of River Links, and the principal of another entity,

Deer Creek Golf Interests, LLC. That entity in turn was a member of River Links, along with four individuals. Mr. Melz was also the president of Deer Creek Construction, Inc., the purported owner of the tract on which the project was to be built. One hundred and sixty acres was planned for the golf course, while 50 acres, more or less, was intended for residential and commercial development around the periphery of the course.

The Development Agreement recited that Deer Creek Construction was the fee simple owner of the development property. Under the Agreement, River Links was to pay Deer Creek $375,000 for its interest in 160 acres, and the construction company was to retain the 50 acres, and to develop the residential and commercial components of the project. In recognition of the "additional value the Golf Facility adds to the Residential Development," Deer Creek was to pay River Links a development fee of $1,000 per residential unit for the first 375 units it completed, payable at the time of the closing on each unit.

Several contract provisions were designed to protect the interest of River Links in the development fees: regardless of the sale of residential units, Deer Creek Construction was to pay River Links the entire $375,000 within sixty-six months of the closing of the Development Agreement; if Deer Creek wished to sell all or part of the development, it was obligated to give River Links the right of first refusal; if Deer Creek sold the property to a third party, the unpaid balance on the $375,000 became immediately due and payable.

In September of 2000, Joseph Melz, in his capacity as President of Deer Creek Construction, and Joseph Sauger as President of River Links, executed a document whereby River Links waived the first right of refusal it was entitled to under the Development Agreement. The waiver recited that Mr. Melz and his wife had entered into a purchase and sale agreement for the fifty-acre property with Main Street Homes, LLC; that Deer Creek Construction would pay River Links $25,000 at the closing of the sale; that this sum was to be applied to the $375,000 obligation; and that if Deer Creek repurchased the property, the first right of refusal would be restored to River Links. There is no arbitration clause in the Waiver Agreement.

According to the allegations of the later-filed complaint, Mr. Melz induced Mr. Sauger to sign the Waiver Agreement by claiming that Main Street Homes was to be a joint venturer with Deer Creek Construction in the residential development, and that the title had to be transferred so that Main Street could obtain financing. He allegedly claimed that the transfer was a mere formality, and that Deer Creek's title would be restored in due course. Mr. Melz insisted that since the conveyance to Main Street "was not really a sale" it did not trigger the obligation to pay the remainder of the development fee.

The plaintiff subsequently learned that there was no joint venture or partnership between Deer Creek Construction and Main Street Homes, and that Mr. Melz had failed to disclose that the transaction was an outright sale for $1.5 million cash. Further, in his capacity as President of Deer Creek, Mr. Melz had allegedly executed a Quitclaim Deed to himself of the residential portion of the development property more than a year prior to the date of the Development Agreement, but did not register the deed until after the waiver was executed. Upon learning of Mr. Melz's actions, River

Links demanded that the waiver be retracted, and that he or Deer Creek pay the $350,000 remainder of the development fee. Mr. Melz refused.

## II. PROCEEDINGS IN THE TRIAL COURT

On September 6, 2001, River Links filed a Complaint for Declaratory Relief and for Damages, naming Joseph Melz and the two companies he controlled as defendants. The plaintiff asked the court to set aside the Waiver Agreement as fraudulently induced, and to hold Mr. Melz liable for compensatory damages of $350,000, as well as for punitive damages, costs and pre- and post-judgment interest. In addition to the fraud claim, the complaint also included claims for unjust enrichment and breach of fiduciary duty.

Additionally the complaint recited that both River Links, LLC and Deer Creek Golf Interests, LLC had been administratively dissolved for failure to file an annual report with the Secretary of State, but that both entities had subsequently reconstituted themselves. The plaintiff asked for a declaratory judgment as to the validity of its actions subsequent to dissolution.

The defendants responded to the complaint on October 22, 2001, by moving the court to stay the proceedings and to enforce the Arbitration Agreements. *See* Tenn. Code Ann. § 29-5-303(d). On November 26, 2001, the court heard oral arguments on the defendants' motion. It denied the motion in an order filed on December 6, 2001.

The court agreed with the plaintiff that since there was no arbitration clause in the waiver agreement, the claims based upon that agreement did not have to be arbitrated. The court further noted that Mr. Melz was not a party in his individual capacity to any contract requiring arbitration, and reasoned that claims against him personally were also not subject to arbitration, but that "[t]o the extent those claims can be construed to state a claim for relief against Defendants Deer Creek Golf Interests, LLC or Deer Creek Construction, Inc., those claims are stayed and referred to arbitration." Finally, the court ruled that the Declaratory Judgment claim related to the post-dissolution actions of the plaintiff was a matter of statutory interpretation and a question of first impression for the Tennessee courts, and that for reasons of judicial economy, the court would retain jurisdiction of the claim. This appeal followed.

## III. THE WAIVER AGREEMENT

Appellant Melz notes that the public policy of this state, as expressed in both statute and case law, strongly favors the enforcement of arbitration agreements. See the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301, et seq., and *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1995). He contends that the Waiver Agreement incorporates the Development Agreement by implication, and thus that all the claims arising from the Waiver Agreement can and should be settled in accordance with the arbitration clause of the Development Agreement.

The trial court determined to the contrary that claims related to the Waiver Agreement did not have to be settled by arbitration, because that Agreement did not contain its own arbitration

clause. It appears to us, however, that the arbitration statute itself furnishes a stronger reason for declining to order arbitration of those claims.

Tenn. Code Ann. § 29-5-302 reads in pertinent part,

(a) A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

Fraud has long been a recognized ground for contract recission or revocation. *Garrett v. Mazda Motors of America*, 844 S.W.2d 178 (Tenn. Ct. App. 1992); *Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977); *Staggs v. Herff Motor Co.*, 390 S.W.2d 245 (Tenn. 1965); *Metropolitan Life Insurance Co. v. Hedgepath*, 185 S.W.2d 906 (Tenn. 1945); *Samuel v. King,* 14 S.W.2d 963 (Tenn. 1929).

Further, our courts have declared that claims of fraud in the inducement are not subject to arbitration. This court held that when a contract has been procured through fraud, then "unless the defrauded party elects to affirm it, there is absolutely no contract, nothing to be arbitrated." *City of Blaine v. John Coleman Hayes & Associates*, Inc., 818 S.W.2d 33, 38 (Tenn. Ct. App. 1991). Our Supreme Court more broadly stated that "Tennessee law does not allow arbitration of contract formation issues." *Frizzell Construction Co. v. Gatlinburg LLC*, 9 S.W.3d 79, 85 (Tenn. 1999). Appellant argues that a plaintiff should only be allowed to avoid arbitration on the basis of fraud in the inducement where the alleged fraud induced the execution of the arbitration clause itself, rather than other clauses in the contract. But in *City of Blaine*, supra, we rejected such a narrow construction of the fraud exception.

## IV. PERSONAL LIABILITY

The trial court ruled that arbitration was not an appropriate vehicle for settling the plaintiff's claims against Joseph Melz personally, because he was not a party to the contracts at issue. The appellant argues that the court's ruling creates an escape hatch whereby any plaintiff can avoid arbitration by simply joining unrelated individuals to its complaint as defendants. We do not agree, because the allegations of the complaint clearly indicate that Mr. Melz is a necessary party to a complete resolution of this dispute.

A party cannot be compelled to arbitrate in the absence of a contractual obligation. *Frizzell Construction Co. v. Gatlinburg LLC*, 9 S.W.3d 79, 84 (Tenn. 1999); *Aspero v. Shearson American Express, Inc.,* 768 F.2d 106 (6th Circuit 1985). The contracts in the record do not indicate that River Links ever agreed to arbitrate disputes with Mr. Melz for actions undertaken in his personal capacity. River Links has alleged that Mr. Melz used his position to convey property away from Deer Creek Construction, Inc., and to himself, and that he pocketed the proceeds of the sale of that property. The disputed property appears to have been the prime asset of Deer Creek Construction. If the plaintiff's allegations are true, then it is uncertain whether any judgment against Deer Creek alone, whether resulting from arbitration or not, can be satisfied from the remaining assets of the company.

-4-

It thus appears to us that the trial court achieved the right balance between equitable considerations and the requirements of the Uniform Arbitration Act by ruling that the claims against Joseph Melz individually could proceed to trial, but that "[t]o the extent those claims can be construed to state a claim for relief against Defendants Deer Creek Golf Interests, LLC or Deer Creek Construction, Inc., those claims are stayed and referred to arbitration."

## V. DISSOLUTION AND DECLARATORY JUDGMENT

Since River Links and Deer Creek Golf Interests are both limited liability companies, they are subject to the formal requirements of the Tennessee Limited Liability Company Act, Tenn. Code Ann. § 48-201-101, et seq. [Acts 1994, ch. 868]. In April of 2001, the Tennessee Secretary of State issued separate notices to River Links, LLC and Deer Creek Golf Interests, LLC, that because of failure to file annual reports, there existed grounds for administrative dissolution of both companies, and that if they did not file the required reports by July 16, 2001, they would be dissolved. *See* Tenn. Code Ann. § 48-245-101. Mr. Melz received the notices as the registered agent for service of process for both companies, but allegedly failed to inform the other members of River Links about the notice. However, River Links did file its annual report before the deadline, and thus avoided dissolution at that time.

But Deer Creek Golf Interests, LLC did not file its annual report, and was notified on June 20, 2001 that it had been administratively dissolved. The dissolution terminated the membership and governance rights of Deer Creek Golf Interests in River Links by operation of law. *See* Tenn. Code Ann. § 48-216-101. It also triggered other consequences arising from the May 2000 Operating Agreement.

The Agreement specified that certain events would trigger the dissolution of River Links and the winding up of its affairs. Section 13.1(d) of the Agreement lists some of those events:

> "upon the death, withdrawal, bankruptcy, or dissolution of a Member or the occurrence of any other event that terminates the continued membership of a Member in the Company unless within ninety (90) days after the disassociation of membership as so provided in subparagraph (d), a majority of the remaining Members consent to continue the business of the Company and to the admission of one or more Members as necessary."

Thus, according to the terms of the Operating Agreement, River Links, LLC was automatically dissolved upon the administrative dissolution of one of its members, Deer Creek Golf Interests, LLC Despite this, River Links continued to operate. According to River Links' attorney, it hired and fired employees, formed contracts with vendors, and resolved a dispute with the Tennessee Department of Environment and Conservation.

Shortly after receiving notice of the administrative dissolution of Deer Creek Golf Interests, the remaining members of River Links consented in writing to the continuation of their business.

They subsequently voted to amend the Operating Agreement, to remove Mr. Melz from his position on the Board of Managers, and to redeem the 18% financial interest of Deer Creek in River Links.

Mr. Melz subsequently applied to the Secretary of State for the reinstatement of Deer Creek Golf Interests, LLC His company was administratively reinstated on August 23, 2001. Tenn. Code Ann. § 48-245-303(c) states that reinstatement "relates back to and takes effect as of the effective date of the administrative dissolution and the LLC resumes carrying on its business as if the administrative dissolution had never occurred." Mr. Melz contends that the reinstatement is retroactive for all purposes, that Deer Creek Golf Interests remains a Member of River Links with full governance rights, and that the amendment to the Operating Agreement is ineffective, as is the redemption of his financial rights. He also demands to be reinstated to the board of the company.

In its complaint, River Links asked for a declaratory judgment as to the rights of the parties in regard to the actions undertaken after its dissolution. Mr. Melz argues that he is entitled to arbitration of the question. The trial court rightly observed that this was a question of first impression, and ruled that as a matter of judicial economy, it was preferable to settle the matter in the courts. We agree.

The purpose of arbitration is to furnish a speedy and inexpensive alternative to litigation. *Buraczynski v. Eyring,* 919 S.W.2d 314 (Tenn. 1996). In a situation like the one before us, where only a few of the issues between the parties are subject to arbitration, a comprehensive resolution of the dispute cannot be obtained through an arbitration proceeding. Further, it appears to us that arbitrators have a duty to grant the parties the relief they are entitled to under the facts and under the law, even though for purposes of finality, an arbitration award is not reversible for a mere mistake of fact or law. Tenn. Code Ann. § 29-5-313(a)(5); *Arnold v. Morgan Keegan & Co., Inc.*, 914 S.W.2d 445 (Tenn. 1996).

The Tennessee Limited Liability Company Act has only been in effect since 1994. There is very little case law dealing with the Act, and none we could find that involves the retroactive effects flowing from the reinstatement of a company after its dissolution. An arbitrator dealing with the complex facts of this case would have no guidance on the proper interpretation of the Limited Liability Company Act, and would have to expend a great deal of time and energy to reach a well-considered conclusion, but his ultimate decision would have no precedential value. It thus appears reasonable to us for the trial court to retain jurisdiction of the declaratory judgment issue, and we reject Mr. Melz' claim that he is entitled to have it arbitrated.

## VI.

The order of the trial court is affirmed. Remand this cause to the Circuit Court of Williamson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants, Joseph Melz, Deer Creek Construction, Inc., and Deer Creek Golf Interests, LLC.

_____

BEN H. CANTRELL, PRESIDING JUDGE, M.S.