# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 6, 2010 Session

## VICTOR J. THOMAS, M.D., et al., v. PEDIATRIX MEDICAL GROUP OF TENNESSEE, P.C.

**Appeal from the Chancery Court for Hamilton County**
**No. 09-0437     Hon. W. Frank Brown, III., Chancellor**

---

**No. E2009-01836-COA-R3-CV - FILED SEPTEMBER 14, 2010**

---

In this declaratory judgment action, plaintiffs asked the Trial Court to declare null and void certain restrictive covenants in their employment contracts with defendant. Defendant moved to dismiss the action and enforce the arbitration agreement contained in the employment contract between the parties. The Trial Court refused to order arbitration and ruled that in the interest of judicial economy, the Court should decide the issues raised in the declaratory judgment action. On appeal, we reverse the Trial Court's refusal to order arbitration and remand, directing the Court to stay the proceeding and order the parties to arbitrate the issues arising from the contracts of employment.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Stephen D. Barham and Jacob C. Parker, Chattanooga, Tennessee, for the appellant, Pediatrix Medical Group of Tennessee, P.C.

Joe A. Conner, Susan E. Rich, and John M,. Phillips, Chattanooga, Tennessee, for the appellees, Victor J. Thomas, M.D., and Lizbeth A. Kennedy, M.D.

# OPINION

On June 12, 2009, appellees filed a Complaint for Declaratory Judgment against appellant Pediatrix Medical Group of Tennessee, P.C., (Pediatrix). The Complaint sought a Declaratory Judgment that Dr. Victor J. Thomas, Jr,'s, and Dr. Lizbeth A. Kennedy's, restrictive covenants with Pediatrix had been nullified by the Tennessee Supreme Court's decision in *Murfreesboro Medical Clinic, P. A. v. Udom*, 166 S. W. 3d 674 (2005). Subsequently, the physicians/appellees moved for Summary Judgment.

Pediatrix then filed a Motion to Dismiss and Enforce Arbitration Agreement, or in the Alternative, to Stay the Proceeding. In the motion, Pediatrix asked the Court to compel the parties to resolve their disputes under the arbitration provisions contained in the Physicians' Employment Agreement. The Physicians responded, and asserted that they should not be required to arbitrate their disputes based upon the principle of judicial economy, and that the validity of the restrictive covenants did not fall within the scope of the subject arbitration provision relied upon by Pediatrix.

On August 17, 2009, the Trial Court denied Pediatrix's Motion and Pediatrix filed a Notice of Appeal on that date.

Drs. Thomas and Kennedy are licensed physicians and board certified in the fields of pediatrics and neonatology. Neonatology is a subspecialty of pediatrics that involves the treatment of newborn infants who are ill or require special medical care due to prematurity, low birth weight, birth defects or other medical complications.

Prior to May of 1999, Drs. Thomas and Kennedy were shareholders in Regional Perinatal and Neonatal Associates, P. C. On May 1, 1999, Regional Perinatal and Neonatal Associates entered into a stock purchase agreement with RPNA Acquistion Company, Inc. (RPNA). By the terms of that agreement, Drs. Thomas and Kennedy conveyed 100% of their stock in Regional Perinatal and Neonatal Associates to RPNA, which subsequently merged with Pediatrix. The doctors executed employment agreements with Pediatrix on May 1, 1999. These agreements had a term of five years and expired on April 30, 2004 without being renewed or amended by the parties. On the following day, May 1, 2004, Drs. Thomas and Kennedy executed another set of employment agreements with Pediatrix (the Employment Agreement), which are the basis of the subject dispute between the parties.

The Employment Agreements contain an arbitration provision as follows:

**XIII. Arbitration.** Any controversy or claim arising out of or relating to this Agreement, or any alleged breach hereof (except for any controversy or dispute

relating to Section VII) shall be finally determined by binding arbitration before a three member panel, consisting of one member selected by each party hereto, with the third member selected by the first two arbitrators. Each party hereto shall bear the costs of its own nominee, and shall share equally the cost of the third arbitrator. The arbitration proceedings shall be held in Chattanooga, Tennessee, unless otherwise mutually agreed by the parties, and shall be conducted in accordance with the American Health Lawyer's Association Dispute Resolution Service, Rules of Procedure for Arbitration. Judgment on the award rendered by the arbitration panel may be entered and enforced by any court having jurisdiction thereof. **Notwithstanding anything herein to the contrary, if the Employer shall request immediate injunctive relief, then the employer shall have the power to invoke the jurisdiction of any court having jurisdiction**, and if the Employer elects to do so, the Employee hereby consents to the jurisdiction of the state and federal courts siting in the State of Tennessee and to the applicable services of process.

(Emphasis supplied).

The two exceptions to the requirement for arbitration contained in Section XIII of the Employment Agreement are a dispute relating to Section VII, which covers an employee's disability, and the Employer may seek injunctive relief from a court having jurisdiction.

The Employment Agreements also contain a section entitled "Restrictive Covenant" that restricts the employee from engaging in certain employment activities within a certain period of time and geographical location upon the expiration of the Employment Agreement as follows:

> **XI.** **Restrictive Covenant** Employee hereby acknowledges that his employment with Employer will enable him to gain in the practice of medicine, and the medical specialties of neonatology or pediatrics and will also enable him to form certain relationships with individuals and entities in the geographical area in which Employer furnishes services. Employee further acknowledges that the goodwill and other proprietary interest of Employer will suffer irreparable and continuing damage in the event Employee enters into competition with Employer subsequent to the expiration of the term or this Agreement, or upon its earliest termination for any reason. Therefore, subject to Section VIII.A[1] and the remainder of this Section XI, Employee agrees that during the term of this Agreement and for a period of two (2) years

---

[1] Section VIIIA provides that the term of this Agreement is from May 1, 2004 to April 30, 2009 and that if at the end of the term the employer does not offer to renew the Agreement, the restrictive covenants in Section XI shall become void and without effect. (Footnote added, not a part of Agreement).

thereafter, whether this Agreement is terminated with cause or without cause and regardless of whether Employee or Employer caused said termination, he will not, without the prior consent of Employer, engage directly or indirectly in the practice of medicine in the specialties of neonatology or pediatrics, either as a shareholder, officer partner, employee, independent contractor, or owner, or in any other capacity calling for the rendition of said services, within ten (10) miles of any health care facility at which Employer is rendering neonatology or pediatric services as of the date of such termination. The foregoing restrictions on the practice of medicine in the specialities of neonatology or pediatrics shall specifically include a prohibition on the solicitation of entities with whom the Employer has contracts to render professional services, solicitation of patients of Employer with whom Employee has had substantial contact, and the use or disclosure of any trade secret of Employer. Notwithstanding the foregoing, it is specifically agreed that (i) if this Agreement is terminated in accordance with Section VIIIB.4 hereof following a breach by Employer of a material provision of this Agreement, the non-competition and related restrictive covenants set forth in this Section XI shall be void and have no further effect and (ii) if this Agreement is terminated in accordance with Section VII C (for disability of Employee), the non-competition and related restrictive covenants set forth in this Section XI shall become void and have no further effect if Employee's disability ceases and Employer refuses to offer Employee employment on terms substantially similar to or better than the terms existing at the time of Employee's termination by reason of disability.

Employee has carefully read and considered the provisions of this Section, and having done so, agrees that the restrictions set forth in this Section XI (including the time period of the restrictions and the geographical areas of restrictions set forth herein) are fair and reasonable and are reasonably required for the protection of the interests of the Employer. **Without limiting other possible remedies available to Employer, Employee agrees that injunctive or other equitable relief will be available to enforce the covenants set forth in this Section XI, such relief to be without the necessity of posting bond. In the event that, notwithstanding the foregoing, any part of the covenants set forth in this Section XI shall be held to be invalid or unenforceable by a court of competent jurisdiction, the parties hereto agree that such invalid or unenforceable provision(s) may be severed from this agreement without, in any manner, affecting the remaining portions hereof. In the event that any provision of this Section XI related to time period or areas of restriction shall be declared by a court of competent jurisdiction to exceed the maximum time period or area such court deems reasonable and enforceable, said period or areas of restriction shall be deemed to become and hereafter shall be a maximum time period or areas which such court deems reasonable and**

**enforceable.** (Emphasis supplied). [2]

Section XV of the Agreement contains a provision that impacts on the issue before the Court, as follows:

XV.   Miscellaneous.

      C.      Choice of Law and Invalid Provisions   This Agreement is made and delivered in, and shall be governed by and construed in accordance with, the applicable laws of the State of Tennessee and **if any term or part of this Agreement shall be determined by a court of competent jurisdiction to be invalid, illegal or unenforceable in whole or in part, the parties agree that such invalid, illegal or unenforceable provision(s) may be severed from this Agreement** without, in any manner, affecting the remaining portions hereof.  (Bolded emphasis added).

At the end of the term of their second agreement with Pediatrix, the Physicians chose not to renew their employment with Pediatrix and, instead,  had plans to form a business relationship with ROC.  They made this decision based on their belief that the restrictive covenants contained in Section XI of the Agreement had been rendered invalid and unenforceable pursuant to the Tennessee Supreme Court's decision of June 29, 2005 in *Murfreesboro Medical Clinic, P. A. v. Udom*, 166 S.W.3d  674 (Tenn. 2005). In *Murfreesboro Medical Clinic,* the Supreme Court held that, except for limited instances which are specifically prescribed by statute,  physicians' covenants not to compete, such as those in Section XI of the subject Agreement, are unenforceable and void.[3]

At the outset of the filing of this case, the parties agreed that the Physicians would continue to work for Pediatrix on a month-to-month basis until the controversy was decided. However, Pediatrix apparently changed its position on the month-to-month employment arrangement as it notified the Physicians by letter of July 8, 2009 that it had placed the Physicians on indefinite administrative leave with pay and benefits.

The issue for review is:

Did the Trial Court err when it denied defendant's motion to dismiss and enforce the

---

[2] The clause of Section XI emphasized is at issue in this appeal.

[3] The statutory exceptions are not present here.

arbitration agreement, or in the alternative stay the proceeding?

In a non-jury trial, our standard of review is *de novo. Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn.1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). With respect to the trial court's legal conclusions, however, there is no presumption of correctness. *See Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn.2000); Tenn. R. App. P. 13(d).

This appeal is properly before the Court. The Tennessee Uniform Arbitration Act ("TUAA"), Tenn. Code Ann. § 29-5-301 *et seq.* affords this Court jurisdiction to consider this appeal. Tenn. Code Ann. § 29-5-319 provides:

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under § 29-5-303;
(2) An order granting an application to stay arbitration made under § 29-5-303(b);
....
(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

*See T. R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 864 - 865 (Tenn. Ct. App. 2002). However, an order to compel arbitration is not appealable under the statute. *Id.* (citing *Peters v. Commonwealth Assoc.,* No. 03A01-9508-CV-00295, 1996 WL 93768 at *2 (Tenn. Ct. App. March 5, 1996).

The issue before the Trial Court was whether the Court should refer the parties to arbitration and stay the lawsuit pending the arbitrators' decision or retain the case and decide the legality of the restrictive covenant. The Trial Court concluded under the concept of judicial economy, to rule in favor of the Physicians "in view of the legal issue of the validity of the restrictive covenant", judicial economy and the " question of whether the parties agreed to arbitrate the validity of the restrictive covenant provision.

Pediatrix contends that the Trial Court erred when it failed to order arbitration.

In 1955 the National Conference on Uniform State Laws passed the Uniform Arbitration Act, which has since been adopted by a majority of states, including Tennessee. Codified at Tenn. Code Ann. § 29-5-301 to 320, the TUAA reflects a judicial and legislative policy favoring the enforcement of arbitration provisions. *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC* 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002)(citing *Buraczynski v. Eyring,* 919 S.W.2d 314, 317 (Tenn. 1996). Tenn. Code Ann. § 29-5-302(a) provides that "a written agreement to submit any existing controversy to arbitration or a provision in a

written contract to submit to arbitration any controversy thereafter arising between parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." Unless a contract containing the arbitration clause is otherwise revocable upon grounds existing at law or in equity, such as fraud, duress or unconscionability, the terms of an arbitration provision are binding on the parties. *D & E Constr. Co. v. Robert J. Denley Co.,* 38 S.W.3d 513, 518 (Tenn. 2001); *see Buraczynski,* 919 S.W.2d at 320. Tenn. Code Ann. § 29-5-303(a) requires that where parties have become bound by a written agreement to arbitrate disputes between them, and one party refuses to arbitrate, "the court *shall* order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party...." If the court finds a valid written agreement to arbitrate, whether to order the parties into arbitration is not a matter of discretion for the court, it is statutorily required. *T.R. Mills Contractors* at 868.

Accordingly, pursuant to the TUAA, the issue for the Trial Court was to determine if the parties had agreed to arbitrate their disputes. The Employment Agreement provides at Section XIII that "[a]ny controversy or claim arising out of or relating to this Agreement, or any alleged breach hereof . . ." will be decided by arbitration. The Physicians do not dispute that the Employment Agreement provides for dispute resolution by arbitration nor do they raise contract formation issues, such as fraudulent inducement, duress or unconscionability as a defense. Instead, the Physicians argue that the contract explicitly excluded the arbitration provision from applying to disputes over the restrictive covenants. Alternatively, they contend that the court, and not arbitrators, should determine whether the restrictive covenants were enforceable based upon principles of judicial economy as there is limited or no case law interpreting *Murfreesboro Medical Clinic, P.A.*, or Tenn. Code Ann. § 63-1-148, which was enacted in 2008 to reverse *Murfreesboro.*

As to whether the contract expressly excluded the arbitration provision, here the parties agree that the arbitration provision in the employment agreement is valid, but they just do not agree on whether the arbitration provision applies to a dispute over the enforceability of restrictive covenants in their contract. In this dispute, we are required to ascertain the intention of the parties "by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." *Id.* (quoting *Penske Truck Leasing Co. v. Huddleston,* 795 S.W.2d 669, 671 (Tenn.1990)). In construing the intent of the contract, the provisions are to be construed in *para materia* to each other. As a general rule, any doubt as to whether a dispute falls within the scope of the arbitration provision should be resolved in favor of enforcing arbitration. *Barclay v. Kindred Healthcare Operating, Inc.*, No. W2008-02828-COA-R3-

CV, 2009 WL 2615821 at * 3 (Tenn. Ct. App. Aug. 26, 2009)(citing *Thompson,* 2006 WL 2380598 at *4 (quoting *Green Tree Fin. Corp .v. Bazzle,* 539 U.S. 444, 452 (2003))(quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985))).

Section XIII of the Employment Agreement contains the provision that the parties agree to binding arbitration of "any controversy or claim arising out of or relating to" the Employment Agreement or any alleged breach of the Agreement. Section XIII contains two express exceptions to the broad scope of the arbitration provision. Any disability issues arising under Section VII of the contract are excluded from the arbitration requirement and the employer is given the right to seek immediate injunctive relief from a court having jurisdiction. Neither of these two exceptions to the broad arbitration provision of Section XIII are applicable here. Significantly, Section XIII does not provide an exception to required arbitration of issues related to the restrictive covenants of Section XI of the agreement.

The Physicians claim that Section XI of the Employment Agreement "expressly contemplates that questions of validity or enforceability" of the restrictive covenants are issues to be decided by a court and are not subject to the arbitration provisions of Section XIII. They point to the following language in Section XI to show that the parties intended to exclude, and in fact did exclude, issues related to the restrictive covenants from the arbitration provisions of Section XIII.

> In the event that, notwithstanding the foregoing, any part of the covenants set forth in this Section XI shall be held to be invalid or unenforceable by a court of competent jurisdiction, the parties hereto agree that such invalid or unenforceable provision(s) may be severed from this agreement without, in any manner, affecting the remaining portions hereof.

The Physicians contend that the foregoing statement clearly demonstrates that the parties intended that disputes arising out of or relating to the restrictive covenants, including the enforceability of the restrictions, be adjudicated by a "court of competent jurisdiction" and not through arbitration. We do not agree with the Physicians' interpretation when the foregoing sentence is read in context with the whole paragraph of which it is a part.

> Employee has carefully read and considered the provisions of this Section, and having done so, agrees that the restrictions set forth in this Section XI (including the time period of the restrictions and the geographical areas of restrictions set forth herein) are fair and reasonable and are reasonable required for the protection of the interests of the Employer. **Without limiting other possible remedies available to Employer, Employee agrees that injunctive or other equitable relief will be available to**

**enforce the covenants set forth in this Section XI, such relief to be without the necessity of posting bond.** In the event that, notwithstanding the foregoing, any part of the covenants set forth in this Section XI shall be held to be invalid or unenforceable by a court of competent jurisdiction, the parties hereto agree that such invalid or unenforceable provision(s) may be severed from this agreement without, in any manner, affecting the remaining portions hereof. In the event that any provision of this Section XI related to time period or areas of restriction shall be declared by a court of competent jurisdiction to exceed the maximum time period or area such court deems reasonable and enforceable, said period or areas of restriction shall be deemed to become and hereafter shall be a maximum time period or areas which such court deems reasonable and enforceable. (Emphasis supplied).

The emphasized sentence in the foregoing that precedes the sentence relied on by the Physicians states that the employer has the right to seek enforcement of the restrictive covenants by filing a petition for injunctive or other equitable relief with a court of law. The next sentence states that in the event the employer does file a petition to enforce the restrictive covenants with a court that has jurisdiction and the court holds the restrictions to be invalid or unenforceable, the invalid or unenforceable provisions will be severed from the agreement with no effect on the rest of the provisions of the section. Thus, under this portion of Section XI, Pediatrix had the right to file a petition for injunctive relief with the Chancery Court to enforce the restrictive covenants if the Physicians had practiced neonatology in Chattanooga within two years of leaving their positions with Pediatrix. Under that scenario, the Court would have had jurisdiction to rule on whether the restrictive covenants were enforceable or not. Section XI does not give the employee a reciprocal right to seek injunctive relief from a court. Further, the employer's right to seek injunctive relief from a court referenced in the above quoted paragraph of Section XI mirrors the more general right granted to the employer, but not to the employee, to seek immediate injunctive relief from a court contained in the arbitration provision, Section XIII.

The Physicians also rely on Section XV.C of the Employment Agreement to show that the parties intended that issues related to the restrictive covenants be resolved by a court and not by arbitration. Section XV.C provides a general statement that "if any term or part of this Agreement" is determined by a court to be "invalid, illegal or unenforceable" the parties agree that such invalid, illegal or unenforceable provision(s) may be severed from this Agreement" without affecting the remaining portions. Again, this section mirrors the more specific provision of Section XI regarding the effect of a court's finding that part of the covenants found in Section XI are invalid or unenforceable. However, Section XV.C does not change the fact that the Employment Agreement makes it clear that all disputes between the parties "arising out of or relating to" the contract are to be arbitrated, save issues regarding the disability of an employee and injunctive relief sought by the employer to

enforce the contract, including the restrictive covenants. Moreover, Section XV.C's provisions are not in conflict with the contract's limitations as to the type of claims that can be adjudicated by a court of competent jurisdiction.

Accordingly, the fact that both Sections XI and XV.C refer to a court of competent jurisdiction declaring a provision of the contract invalid, illegal or unenforceable does not mean that the parties contracted to allow the employees to seek redress from the terms of the restrictive covenants by filing a complaint for declaratory judgment in Chancery Court as the Physicians did here.   Pursuant to the Employment Agreement, the Physicians must submit their claim that the restrictive covenants are unenforceable to arbitration.  We hold the Court erred when it found otherwise.

Finally, the issue thus becomes:  Did the Trial Court err when it denied arbitration in the interest of judicial economy?

The Trial Court in part based its denial of Pediatrix's motion to arbitrate on a finding that it was in the interests of judicial economy as set forth in *River Links at Deer Creek, LLC v. Melz*, 108 S.W.3d 855 (Tenn. Ct. App. 2002) *appeal denied* May 27, 2003.  The Physicians maintain that the Court was correct because the issue before the Court involves novel questions of law and pertains to a recently enacted statute, Tenn. Code Ann. § 63-1-148. .

In *Melz*, the plaintiff filed a declaratory action and raised several causes of action that hinged on the 1994 Tennessee Limited Liability Company Act.   *Melz* at 858.  The facts in *Melz* are quite complicated.  The plaintiff, a developer of a golf course and an L.L.C., brought a fraud complaint against Melz, the property owner who furnished the land for the golf course, and against several companies Melz controlled, some of which were L.L.C.s. *Id.*  Plaintiff also asked for a declaratory judgment as to the validity its own actions and the actions of one of the Melz controlled L.L.C.s subsequent to dissolution of those L.L.C.s and the impact of the Tennessee Limited Liability Company Act, Tenn. Code Ann. § 48-201-101, *et seq.* on these issues.  Defendants filed a motion to stay the proceedings and to enforce arbitration based on the argument that plaintiff's remedies were limited by the arbitration clauses contained within two of three contracts that defined the parties' relationship.  *Id.* The motion to order arbitration was denied in part by the trial court.  The court reasoned that as one of the three contracts sued upon did not contain an arbitration clause, the claims brought pursuant to that contract did not have to be arbitrated.   Further, the court noted that Melz, as an individual, was not a party to any contract that required arbitration, thus any claims against Melz in his individual capacity were not subject to arbitration. The trial court, however, stayed the claims arising out of the two contracts that had arbitration provisions and referred that part of the suit for arbitration.   Finally, the trial court held that the declaratory

judgment claim related to the post-dissolution actions of the plaintiff L.L.C. was a matter of statutory construction and a question of first impression for Tennessee courts and that for reasons of "judicial economy", the court would retain jurisdiction of this claim. *Id.* at 858 - 859.

The Court of Appeals affirmed the trial court's judgment. The Court commented on the unique set of facts presented by the case as follows:

> The purpose of arbitration is to furnish a speedy and inexpensive alternative to litigation. *Buraczynski v. Eyring,* 919 S.W.2d 314 (Tenn.1996). In a situation like the one before us, where only a few of the issues between the parties are subject to arbitration, a comprehensive resolution of the dispute cannot be obtained through an arbitration proceeding. Further, it appears to us that arbitrators have a duty to grant the parties the relief they are entitled to under the facts and under the law, even though for purposes of finality, an arbitration award is not reversible for a mere mistake of fact or law. Tenn.Code Ann. § 29-5-313(a)(5); *Arnold v. Morgan Keegan & Co., Inc.,* 914 S.W.2d 445 (Tenn.1996).
>
> The Tennessee Limited Liability Company Act has only been in effect since 1994.
>
> There is very little case law dealing with the Act, and none we could find that involves the retroactive effects flowing from the reinstatement of a company after its dissolution. An arbitrator dealing with the complex facts of this case would have no guidance on the proper interpretation of the Limited Liability Company Act, and would have to expend a great deal of time and energy to reach a well-considered conclusion, but his ultimate decision would have no precedential value. It thus appears reasonable to us for the trial court to retain jurisdiction of the declaratory judgment issue, and we reject Mr. Melz' claim that he is entitled to have it arbitrated.

*Melz* at 861.

The *Melz* decision is inapposite. First, the Physicians make it very clear in their brief that they are confident that *Murfreesboro Medical Clinic, P.A.,* nullified the restrictive covenants at issue and state in their brief: "[*Murfreesboro Medical Clinic*] distinctly held that virtually *all* restrictive covenants involving doctors . . . . were void as against public policy." An experienced, certified panel of arbitrators can likewise read that decision and conclude whether or not the Employment Agreement at issue falls within the perimeters set out in *Murfreesboro,* just as counsel for the Physicians has done. Likewise, an experienced and certified panel of arbitrators can determine whether Tennessee law permits the *Murfreesboro* decision to be applied retroactively to the Employment Agreement, which was entered into prior to the Supreme Court issuing the *Murfreesboro* decision. This area of law is not novel

-11-

or untested by the courts.

The Physicians also point out that the truly novel issue posed by this case arises from the subsequent actions taken by the Tennessee legislature when it enacted Tenn. Code Ann. § 63-1-148, that took effect on January 1, 2008. They argue that because their employment Agreements ended after the statute took effect, the applicability of the statute to this case hinges on whether the statute is to be given retroactive effect. They express concern that because no appellate court in Tennessee has opined on the retroactivity of that statute, an arbitrator would not have any guidance as to how to decide the issue. Again, a panel of experienced, certified arbitrators would be able to rely on the well established law in Tennessee regarding the retroactive application of statutes, the rules of statutory construction as well as the legislative history of the statute when determining whether it is retroactive and applicable to the Employment Agreement.

We hold the Trial Court erred when it overruled Pediatrix's motion to order arbitration. We reverse and remanded to the Trial Court, and direct that an Order be entered to require the parties to arbitrate the issues in dispute.[4]

The cause is remanded for further proceedings consistent with this Opinion, and the cost of the appeal is assessed to Victor J. Thomas, M.D., and Lizbeth A. Kennedy, M.D.

_____
HERSCHEL PICKENS FRANKS, P.J.

_____

[4] *See Barclay,* 2009 WL 2615821 at * 2 (upon granting a motion to compel arbitration the correct procedure in the trial court is to stay the matter pending arbitration and not to dismiss it.)(citing *Mitchell v. Kindred Healthcare Operating, Inc.,* No. W2008-01643-COA-R3-CV, 2009 WL 16846467 at *3 (Tenn. Ct. App. June 17, 2009); *Thompson v. Terminix Int'l Co.,* No. M2005-02708-COA-R3-CV, 2006 WL 2380598 at *3 (Tenn. Ct .App. Aug. 16, 2006); *M.R. Dillard Constr. v. J.P. Realty, II, Inc.,* No. M1999-01250-COA-R3-CV, 2000 WL 48497 at *1 (Tenn. Ct. App. Jan. 21, 2000).