IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 8, 2018 Session

## MELO ENTERPRISES, LLC ET AL. v. D1 SPORTS HOLDINGS, LLC

**Appeal from the Chancery Court for Williamson County**
No. 46199      Deanna B. Johnson, Judge

———————————————————

### No. M2017-02294-COA-R3-CV

———————————————————

This appeal follows the trial court's denial of a motion to compel arbitration as to a claim for fraudulent inducement. For the reasons stated herein, namely that there was no agreement to arbitrate such a claim, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which RICHARD H. DINKINS J., joined and W. NEAL MCBRAYER, J joined and filed a separate concurring opinion.

Ryan A Kurtz, Atlanta, Georgia, and Robert F. Parsley and Megan B. Welton, Chattanooga, Tennessee, for the appellant, D1 Sports Holdings, LLC.

Garrett P. Swartwood, Knoxville, Tennessee, for the appellees, Melo Enterprises, LLC, Austin Sports & Entertainment, Inc., OACM Sports Holdings,LLC, and D1 Sports Training of Baltimore, LLC.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

The genesis of this case is traceable to July 18, 2014, when the Appellant D1 Sports Holdings, LLC ("D1 Holdings"), a Tennessee limited liability company, organized another Tennessee limited liability company, D1 Sports Training of Baltimore, LLC ("D1 Baltimore"). D1 Baltimore was organized for the purpose of establishing an athletic training facility in Baltimore, Maryland, and subsequent to its formation, three of the Appellees in this matter purchased membership interests in the new legal entity. Appellee Austin Sports & Entertainment, Inc. ("Austin Sports"), a Maryland corporation,

acquired its membership interests the same month that D1 Baltimore was formed. In its Unit Purchase Agreement, Austin Sports acquired 300 units of membership interests for a purchase price of $200,000 and other consideration. In October 2014, Appellee Melo Enterprises, LLC ("Melo Enterprises"), a company formed under the laws of Delaware, entered into its own Unit Purchase Agreement, acquiring 550 units of membership interests in D1 Baltimore for $500,000 and other consideration. Following the purchase agreements entered into by Austin Sports and Melo Enterprises, an additional acquisition of membership interests in D1 Baltimore occurred in June 2015, when Orthopaedic Associates of Central Maryland, P.A., entered into a Unit Purchase Agreement on behalf of its to-be-formed affiliate OACM Sports Holdings, LLC ("OACM Sports"). This latest agreement involved the purchase of 150 units of membership interests in D1 Baltimore for $150,000. OACM Sports was duly organized in Maryland on June 9, 2015.

According to Austin Sports, Melo Enterprises, and OACM Sports (collectively the "Investor Plaintiffs"), D1 Holdings made certain representations prior to the entry of the Unit Purchase Agreements that all or some of their investments would be paid to and held by D1 Baltimore and used for its benefit. The present dispute ensued as a result of these alleged representations. On May 10, 2017, a complaint was filed against D1 Holdings in the Williamson County Chancery Court by the Investor Plaintiffs and D1 Baltimore. The filed complaint contained a count for fraudulent misrepresentations, wherein it was asserted that "D1 Holdings intended its fraudulent misrepresentations to induce the Investor Plaintiffs to enter into the Unit Purchase Agreements," a count for declaratory relief, and an alternative count for conversion on behalf of D1 Baltimore. Among other things, the Investor Plaintiffs sought to have the trial court rescind the Unit Purchase Agreements.

Specifically regarding the fraud that allegedly precipitated the entry of the Unit Purchase Agreements, the complaint stated in part as follows:

> 15. Despite the representations of D1 Holdings, and unknown to the Investor Plaintiffs, D1 Holdings had no intention at the time of making its representations . . . of using the investor contributions for the benefit of D1 Baltimore or to establish, construct or operate a training facility in Baltimore, Maryland. Instead, D1 Holdings engaged in a fraudulent scheme to divest money from the Investor Plaintiffs for the use and benefit of D1 Holdings and not for the business of D1 Baltimore.

> 16. At or about the time the Unit Purchase Agreements were signed, D1 Holdings requested that the Investor Plaintiffs each wire funds directly to an account owned by D1 Holdings for the purchase price of the membership interests in D1 Baltimore. D1 Holdings represented at that time that all or a portion of the purchase price funds would be transferred to D1 Baltimore for use in the commencement of its operations. In reliance

upon the representations of D1 Holdings, Austin Sports caused the full amount of the purchase price under its Unit Purchase Agreement to be wired to D1 Holdings on or about July 21, 2014; Melo Enterprises caused the full amount of the purchase price under its Unit Purchase Agreement to be wired to D1 Holdings on or about October 29, 2014; and OACM Sports caused the full amount of the purchase price under its Unit Purchase Agreement to be wired to D1 Holdings on or about June 22, 2015.

17. Upon information and belief, D1 Holdings never transferred to D1 Baltimore any portion of the purchase price paid by the Investor Plaintiffs.

18. Instead, D1 Holdings kept the funds paid by the Investor Plaintiffs for its own use and benefit.

Although D1 Holdings subsequently filed an answer to the complaint raising several defenses on its behalf, one of these defenses—that the Plaintiffs' claims were subject to binding arbitration—soon became the central focus of the litigation. In a filing submitted contemporaneous with its answer, D1 Holdings moved the trial court to compel arbitration, stating that the "parties contractually agreed to arbitrate this dispute." Although D1 Holdings acknowledged that the Unit Purchase Agreements did not themselves contain arbitration provisions, it noted that arbitration provisions were included in D1 Baltimore's Operating Agreement, a Management Agreement between D1 Baltimore and D1 Holdings, and amendments thereto. It further argued that the "Unit Purchase Agreements . . . incorporate[d] the Operating Agreement, or . . . the Amended Operating Agreement" and that said operating agreements "incorporate and attach as exhibits the Management Agreement and Amended Management Agreement, respectively." When the Investor Plaintiffs and D1 Baltimore filed a response opposing D1 Holdings' motion to compel arbitration, they set forth two principal arguments: (1) the Unit Purchase Agreements did not contain or incorporate any agreement to arbitrate and (2) in any event, because the agreements that D1 Holdings relied on contained a Tennessee choice of law provision, Plaintiffs had the right to assert claims of fraudulent inducement in a judicial forum.

Following a hearing on D1 Holdings' motion to compel arbitration, the trial court entered a "Memorandum and Order" granting D1 Holdings partial relief. First, the trial court concluded that the Unit Purchase Agreements contained language which was "an unambiguous incorporation by reference of the terms, conditions, provisions, and limitations of D1 Baltimore's Operating Agreement or . . . the Amended Operating Agreement." As a result, the court held that the parties had agreed to arbitration and the claims for conversion and declaratory relief should be arbitrated. However, in noting that the underlying agreement contained a Tennessee choice of law provision, the trial court cited to *Frizzell Construction Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79 (Tenn. 1999),

and its progeny, and held that "Plaintiffs are entitled to a judicial determination of their fraudulent inducement claim." A timely notice of appeal was thereafter filed in this Court by D1 Holdings pursuant to Tennessee Code Annotated section 29-5-319, allowing an immediate interlocutory appeal of a decision denying arbitration.

## DISCUSSION

### *Scope of Appellate Review*

As a preliminary matter, it is necessary to consider the limits of our appellate review. *See* Tenn. R. App. P. 13(b) ("The appellate court shall . . . consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review[.]"). Broadly speaking, two general issues are raised for our consideration in the present appeal. Whereas Appellant D1 Holdings challenges the trial court's failure to send the fraudulent inducement claim to arbitration, the Appellees submit that the trial court's decision to compel arbitration as to the remaining claims should be reversed. In our opinion, the only cognizable issue in this appeal relates to whether the trial court erred in declining to send the fraudulent inducement claim to arbitration.

In reaching the conclusion that the propriety of the trial court's decision to compel arbitration of claims is beyond our jurisdiction in this appeal, we observe that Tennessee Code Annotated section 29-5-319 provides as follows:

> (a) An appeal may be taken from:
> (1) An order denying an application to compel arbitration made under § 29-5-303;
> (2) An order granting an application to stay arbitration made under § 29-5-303(b);
> (3) An order confirming or denying confirmation of an award;
> (4) An order modifying or correcting an award;
> (5) An order vacating an award without directing a re-hearing; and
> (6) A judgment or decree entered pursuant to this part.

Tenn. Code Ann. § 29-5-319. Although the Appellees concede that an appeal of a grant of a motion to compel arbitration "may not be initiated" under this statute, they note that the present appeal was initiated by Appellant D1 Holdings. They argue, as a result, this allows them to raise their own issues pursuant to the Tennessee Rules of Appellate Procedure. Specifically, the Appellees point to Rule 13(a) of the Tennessee Rules of Appellate Procedure, which provides that "any question of law may be brought up for review and relief by any party." Tenn. R. App. P. 13(a).

- 4 -

We certainly do not question that the appellate rules of procedure permit an appellee to raise his or her own appellate issues in response to an appeal initiated by another party. This right, however, has no bearing on whether the raised issues are, in fact, amenable to appellate review. If our consideration of an issue would run afoul of a jurisdictional prohibition, then we cannot entertain it.

Here, the Appellees seek to appeal the trial court's decision to compel certain claims to arbitration, but such a right is not afforded pursuant to the appeal provisions of Tennessee Code Annotated section 29-5-319. *See Peters v. Commonwealth Assocs.*, No. 03A01-9508-CV-00295, 1996 WL 93768, at *2-3 (Tenn. Ct. App. Mar. 5, 1996) (discussing the limitations of Tennessee Code Annotated section 29-5-319 and noting that appeal was premature when litigant sought to challenge the trial court's order compelling arbitration); *Blue Water Bay at Center Hill, LLC v. Hasty*, No. M2016-02382-COA-R3-CV, 2017 WL 5665410, at *4 (Tenn. Ct. App. Nov. 27, 2017) (noting that the first opportunity the appellant had to challenge the trial court's prior decision to compel arbitration came in an appeal following the trial court's confirmation of the arbitrator's award). Therefore, we dismiss the appeal of the Appellees.

### *Fraudulent Inducement Claim*

Turning to D1 Holdings' appeal, we begin by noting that the *merits* of the Investor Plaintiffs' fraudulent inducement claim are not before us. We are only concerned with whether the trial court erred in denying D1 Holdings' motion to compel arbitration as to that claim. Where, as in this case, the basic facts do not appear to be in dispute, we review the denial of a motion to compel arbitration de novo, with no presumption of correctness. *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 807 (Tenn. Ct. App. 2015) (citation omitted).

At its core, arbitration is a matter of contractual consent. Indeed, "[a] party cannot be compelled to arbitrate in the absence of a contractual obligation." *River Links at Deer Creek, LLC v. Melz*, 108 S.W.3d 855, 859-60 (Tenn. Ct. App. 2002) (citations omitted); *see also Frizzell Constr. Co., Inc.*, 9 S.W.3d at 84 ("[P]arties may agree that only certain issues will be submitted to arbitration or that they will not arbitrate at all."). As explained below, a contractual predicate for arbitration of the fraudulent inducement claim is simply absent in this case.

The Investor Plaintiffs' fraudulent inducement claim involves allegations that "D1 Holdings intentionally made misrepresentations . . . to the Investor Plaintiffs," that it "knew . . . its misrepresentations . . . were false when made," and that it intended its misrepresentations to "induce the Investor Plaintiffs to enter into the Unit Purchase Agreements." The Investor Plaintiffs' grievances are thus tied to the Investor Plaintiffs' purchases of membership interests in D1 Baltimore and D1 Holdings' conduct that allegedly induced such purchases. Inasmuch as the Investor Plaintiffs are complaining

about D1 Holdings' conduct attendant to the entry of the Unit Purchase Agreements, we look to see whether those agreements contain any provisions providing for arbitration of disputes arising therefrom or related thereto. Notably, they do not.

There is no dispute that the Unit Purchase Agreements are themselves devoid of any specific arbitration provisions. Yet, the trial court concluded that an agreement to arbitrate had been incorporated into those agreements by virtue of a provision that provided as follows: "By purchasing the herein contemplated Units, Purchaser agrees to be subject to and bound by the terms, conditions, provisions and limitations of this Agreement, as well as the Operating Agreement of D1 Sports Training of Baltimore, LLC."[1] According to the trial court, such language represented "an unambiguous incorporation by reference of the terms, conditions, provisions, and limitations of D1 Baltimore's Operating Agreement or, in the case of Melo Enterprises, LLC, the Amended Operating Agreement." Because the referenced operating agreements contained arbitration provisions, the trial court reasoned that there had been a "clear expression" to submit disputes to mandatory and binding arbitration.[2]

Having reflected on the trial court's holding that an arbitration provision was incorporated into the purchase agreements, we have come to the conclusion that our view of the language cited by the trial court is decidedly different. No doubt, each of the Unit Purchase Agreements references the "Operating Agreement" of D1 Baltimore. These references, however, do not actually incorporate the terms of the Operating Agreement (or amendment thereto) into the Unit Purchase Agreements. The language of the Unit Purchase Agreements without question makes the Investor Plaintiffs bound by the "Operating Agreement," but importantly, the language does not state that the terms of the "Operating Agreement" are incorporated into or are supposed to inform the Unit Purchase Agreements. Properly understood, the purchase agreements merely include an obligation to be bound by a separate agreement; they do not evidence an intent that the provisions of the referenced separate agreement define and shape the understanding of the purchase agreements.

Certainly, the Unit Purchase Agreements could have contained language whereby the arbitration provision of the Operating Agreement properly became a term that augmented the meaning and application of the purchase agreements. As the federal Eighth Circuit observed in a recent case that applied Tennessee law:

---

[1] The language in Melo Enterprises' Unit Purchase Agreement was only marginally different with respect to this provision, as it merely omitted the qualifying phrase "of D1 Sports Training of Baltimore, LLC."

[2] Of course, as has been referenced previously, the trial court ultimately denied the motion to compel arbitration with respect to the fraudulent inducement claim, stating that "Tennessee courts may not delegate fraudulent inducement claims to arbitration when, as here, the underlying agreement contains a Tennessee choice of law provision."

- 6 -

Contracting parties can incorporate an entire agreement by, for example, referring to an attached agreement and saying its "terms" are incorporated without specifying the terms, or saying "both parties" are bound by its terms. *See Staubach Retail Servs.–Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 523–25 (Tenn. 2005) (agreement incorporated all terms of a brokerage agreement by stating "*[t]he terms and provisions of that certain Brokerage Agreement, an unexecuted photocopy of which is attached hereto ... and incorporated by reference, are incorporated into this Lease and made a part hereof*" (emphasis in original)); *Roger Miller [Music v. Sony/ATV Publ'g]*, 477 F.3d [383,] at 393 [(6th Cir. 2007)] (agreement incorporated all terms of Exhibit A, even those not addressing royalties, by stating that "the signing of separate [Exhibit A] agreements is hereby waived, and the terms and conditions as to royalties and the payment thereof shall be deemed part of the main agreement," where previous agreements calling for the execution of Exhibit A agreements stated "*both [parties] are to be bound* by the terms, covenants, and conditions of [the Exhibit A agreement] as if herein fully set forth" (emphasis added)).

*First Dakota Nat'l Bank v. Eco Energy, LLC*, 881 F.3d 615, 618–19 (8th Cir. 2018). Here, however, we are of the opinion that there is insufficient language to incorporate the arbitration provision of the Operating Agreement into the Unit Purchase Agreements. Again, the purchase agreements do not provide that the terms of the Operating Agreement are incorporated[3] into them, nor do the purchase agreements specify that the purchasers are bound by additional terms as if set forth therein. The purchase agreements simply include the obligation to be bound by a separate agreement, and there is insufficient language included to reach the conclusion that the Operating Agreement is to be considered a part of the purchase agreements. In other words, although the signatory purchaser is deemed to be "subject to" and "bound by" the Operating Agreement by dint of the purchaser's decision and agreement to buy membership interests in D1 Baltimore, the purchase agreements do not say that *they*, the purchase agreements, are actually subject to such additional terms.

In light of our conclusion that the Unit Purchase Agreements do not contain arbitration provisions, whether by incorporation or otherwise, the fraudulent inducement claim properly remains subject to judicial determination. The trial court's ultimate denial of the motion to compel arbitration of that dispute is therefore affirmed on that basis.

---

[3] Elsewhere the Unit Purchase Agreements do specifically incorporate terms of another document by reference. In section 5, the Unit Purchase Agreements provide that the Investor Representations and Warranties "are incorporated herein by reference."

**CONCLUSION**

Although we do not have jurisdiction to specifically entertain the Appellees' asserted grievances, we affirm the trial court's holding that the fraudulent inducement claim is not arbitrable.

_____
ARNOLD B. GOLDIN, JUDGE